(No. 36278.—)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* SAM BATTLE, Plaintiff in Error.

*Opinion filed May 25, 1962.*

DAVID F. CAVERS, JR., of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and JOHN T. GALLAGHER and MARVIN E. ASPEN, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

The defendant, Sam Battle, was tried by jury in the criminal court of Cook County and convicted of the crime of murder. He has brought the case to this court by a writ of error, having obtained a transcript under Rule 65—1.

The main contention advanced by the defendant in this court is that the court erred in permitting the State to prove that the defendant was guilty of crimes other than that for which he was on trial. An analysis of this contention requires us to consider all of the evidence. The defendant was indicted and tried for the murder of Ezell Johnson. John Baborsky, a detective from the narcotics section of the Chicago Police Department, testified that the deceased came to him and gave him certain information. As a result of this information, Baborsky obtained a search warrant and later that same evening served the warrant on the defendant and confiscated some narcotics. An objection to this line of questioning was overruled by the court with the re-

mark that if this testimony was not connected up the court would permit the defendant to renew his motion to strike the testimony. On cross-examinaion, the officer testified that the deceased had told him that he had purchased narcotics from "Jesse" and "Fat Stud" and had not mentioned the defendant by name. He also testified that after the defendant had been arrested on the narcotics charge he was never confronted with the deceased, and to the officer's knowledge the defendant never saw the deceased. The officer said that after he had arrested the defendant on the narcotics charge he asked him if he knew who "Jesse" was, and the defendant replied, "I am Jesse."

Emagene Clark testified that she was in a restaurant at about 4:00 in the morning when she saw the defendant standing with a gun in his hand talking to the deceased. She heard the defendant ask the deceased if he had the defendant's money. She could see that the deceased made some sort of reply which she could not hear, and the next thing she knew there was a shot fired. The witness testified on cross-examination that just before the defendant fired the gun she saw the deceased make a violent motion as he reached in his pocket. The witness volunteered the statement, without objection, that if Johnson had had anything in his pocket he would have used it.

A police officer testified that he was summoned to the restaurant after the shooting and that when he examined the body of the deceased he found no weapon. Another witness, Romia Barclay, testified that he was in the restaurant at the time of the shooting and that he saw the defendant enter the restaurant and pull a gun. Defendant stopped near the booth where the deceased was sitting and said "Are you ready?" and then shot the deceased. This witness admitted that he had served two terms in the penitentiary for burglary.

Another police officer, Harry Anderson, testified that when he arrested the defendant on the murder charge the

defendant had told him that the deceased had robbed him and had shot his girl friend.

The defendant's statement was admitted in evidence by stipulation. In the statement the defendant said that he had walked into the restaurant and asked the deceased if he had the defendant's money. The deceased made an obscene reply and put his hand in his pocket and the defendant shot him.

For the defense, the defendant's wife testified that a short time before the shooting the deceased had come to the defendant's apartment and had grabbed the defendant's gun and had taken about 90 capsules of narcotics and some money. The defendant corroborated his wife's testimony as to the robbery and testified that the drugs he had in his home at the time were for his personal use. He testified that at the time of the shooting he asked the deceased for his money and the deceased put his hand in his pocket like he was going to take something out. The defendant testified that he knew the deceased frequently carried a gun, so he shot the deceased. He was asked on cross-examination how long he had been in the business of selling narcotics and he denied ever selling any but admitted that he was a narcotics addict. He was then asked whether he had been previously asked how much he made per week from selling narcotics and whether he had replied that he made about $300 per week. He denied making that statement. He was also asked on cross-examination whether he had previously admitted selling heroin and he denied making any such admission.

In rebutal, Officer Baborsky testified that following the defendant's arrest he admitted selling heroin and told the officer that he made about $300 per week from such sales.

In the prosecution's final argument, the defendant was referred to as a dope peddler. The prosecution admitted that most of the witnesses in the case were pretty sordid characters but asked the jury who was worse, the man who

was dead and who stole to satisfy his narcotics habit, or the man who supplied the narcotics. It was argued that the defendant killed the deceased because the deceased had informed the police concerning the defendant's narcotics sales. The prosecutor closed the argument to the jury by recommending a sentence of 100 years, stating that he wanted the word to get back to the narcotics circles throughout the community that narcotics sellers could not take the law into their own hands. The prosecutor told the jury that the narcotics traffic was responsible for all kinds of petty thievery by people who are held in tow by narcotics sellers like the defendant.

It is well established that evidence of other crimes is inadmissible except insofar as it tends to prove identity, absence of a mistake or accident, motive or intent, or a common scheme or design. (*People* v. *Prohaska,* 8 Ill.2d 579.) The State attempts to justify the evidence in the the present case concerning the defendant's narcotics activities on the theory that this evidence tends to establish a motive for the crime. It is argued that the defendant killed the deceased because the deceased had informed the police concerning the defendant's narcotics sales. However, there was no evidence in this case that the defendant knew that the deceased had informed the police. The police officer admitted that the defendant was never confronted with the deceased and the only possible connection is that the deceased said that a man named Jesse sold narcotics and the arresting officer asked defendant if he knew who "Jesse" was. If the defendant was in fact a seller of narcotics, it is quite likely that he was known to many of his purchasers by the name of Jesse, and the fact that the officer asked him about this name does not tend to prove that the defendant thereby knew that it was the deceased who informed against him. The situation here is similar to that in *People* v. *Gougas,* 410 Ill. 235, where the People claimed that the defendant killed the deceased in order

to recover the proceeds of a life insurance policy in which the defendant was the beneficiary. We pointed out that there was no proof that the defendant knew that he was the beneficiary of the policy and held that evidence as to the policy did little more than excite a suspicion of guilt, and was insufficient to establish a motive. In *People* v. *Lavac*, 357 Ill. 554, the defendant killed a police officer who had come to defendant's house to arrest him for contributing to the delinquency of his children. The defendant admitted shooting the officer but denied knowing that deceased was a police officer and contended that he shot in defense of his home. The State argued that defendant knew he had violated the law and contributed to the delinquency of his children and therefore must have anticipated arrest and must have known that the deceased was a police officer who had come to arrest him. We said: "No such violent and far-fetched inferences can be indulged in to sustain a murder conviction." (357 Ill. 559.) The same comment is appropriate in the present case with respect to the State's argument that the defendant must have known the deceased was the one who had informed against him.

Furthermore, even if evidence of a specific sale of narcotics to the deceased might have been admissible on this theory, there was no justification for proving that the defendant made numerous other sales from which he received about $300 per week. Nor was there any justification for the final argument of the prosecution in which the defendant was castigated as a narcotics peddler and in which the prosecution dwelt upon the evils of the narcotics trade, and the argument that the defendant, a seller of narcotics, was worse than the deceased who was a user of narcotics. In cases where the jury is charged with fixing the penalty, the trial court should be especially careful to exclude improper evidence and argument as to other offenses. (*People* v. *Donaldson*, 8 Ill.2d 510.) The present case is a good example of the reason for this rule. Here, the prosecutor asked

for a verdict fixing the penalty at 100 years, not because of the nature of this crime, but as a warning to other narcotics dealers. Such an argument has no place in a trial for murder. The jury returned the exact verdict requested by the prosecutor, indicating that the jurors were influenced by the improper argument. The verdict cannot be permitted to stand.

The judgment of conviction must be reversed because of the prejudicial error in admitting the evidence of the defendant's narcotics activities and because of the prejudicial argument by the prosecutor. It is therefore unnecessary for us to consider the other errors which have been assigned. The judgment of the criminal court of Cook County is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*