People of the State of Illinois, Plaintiff-Appellee, v. Major Brown, Defendant-Appellant.

Gen. No. 50,470.

First District, Second Division.

October 19, 1965.

Rehearing denied November 2, 1965.

 

Paul G. Stemm, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Stuart P. Shapiro, of counsel), for appellee.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

In a bench trial under an indictment charging robbery, Major Brown was found guilty and sentenced to imprisonment in the penitentiary for from 7 to 10 years. He appeals to reverse the judgment and to remand the cause for a new trial.

At 6:20 p. m. on Saturday, June 23, 1962, the Leader Cleaners store at 13th Street and Pulaski Road in Chicago was robbed. Patricia Irene Murphy, who was the only employee in the store at the time of the robbery, testified that at 6:20 p. m. a man entered the store, put a gun in her face and demanded her money. She gave him the money, $10 or $12 from the cash register and he left. She called the police. While the robbery was in progress she noticed that the right thumb joint of the robber was missing. On July 28, 1962, she pointed out the defendant from a lineup of 6 men as the individual who robbed her on June 23, 1962. In the trial she identified the defendant as the person who robbed her. On July 27, 1962, the defendant was apprehended by Adolph Neruda, a police officer, who testified that in a response to a radiogram he arrested the defendant coming out of a currency exchange. The defendant was then brought to the police station where he was identified by Miss Murphy the next day in a lineup. James Cusack, a detective, testified that on the evening of July 27, 1962, he had a conversation with the defendant. The detective showed the

205

defendant the case report on the Leader Cleaner robbery which according to the description given the police by Miss Murphy identified the defendant. When Detective Cusack indicated to the defendant that he had been a fool to show his right hand at the time of the robbery since the first joint of his right thumb was missing, the defendant, according to Cusack, admitted, "You got me, I know you got me."

The defendant testified that he had not committed the crime charged. He claimed that he had never spoken with Detective Cusack and had not indicated his guilt as Cusack testified. The defendant said that at the time of the robbery he was engaged in promotional work for Mr. William Jack of Jack's Drive-In Lounge but that he did not have any particular hours. The defendant on cross--examination admitted that he wrote Miss Murphy a letter which stated that he was not working the day of the robbery and that he was missing "the first two digits" from his right thumb. After the defense rested, the People in rebuttal, introduced (to affect the defendant's credibility) an exhibit, stipulated to by the defense, which showed defendant's 1955 conviction for the infamous crime of burglary and that he was sentenced to the Illinois State Penitentiary. The defendant maintains that the court erred in admitting testimony concerning the alleged commission of other crimes. He calls particular attention to the testimony of Officer Neruda that on July 27, 1962, at 8:45 p. m., he received a radiogram and was told to proceed to a currency exchange at 1624 West Van Buren Street where he observed the defendant emerging from the building, stopped him, and took him back inside where a woman identified him. Defendant was then arrested and searched. The search revealed that the defendant was carrying a toy gun. An objection to the answer was made by the defendant before the answer was completed. The court did not rule on the objection because the State's Attorney accepted the

validity of the objection. The witness, continuing, said that he brought the defendant back into the currency exchange, placed him under arrest, searched him and found a toy derringer on his person. The defendant asserts that Officer Neruda's testimony reveals the alleged commission of another crime. At the time the instant case was being tried the defendant was under indictments for two other crimes and these cases were assigned to the same trial judge and were on his call at the time. Defendant says that the testimony of the officer could only result in prejudice against the defendant since it came at the beginning of the trial. It is well established that evidence of other crimes is inadmissible except insofar as it tends to prove identity, absence of a mistake or accident, motive or intent, presence at the scene of the crime when an alibi is interposed or a common scheme or design. People v. Battle, 24 Ill2d 592, 182 NE2d 713; People v. Davis, 14 Ill2d 196, 151 NE2d 308.

The respective briefs discuss the consideration to be given a bench trial as distinguished from a jury trial in considering the testimony. We call attention to the following excerpt from People v. Smith, 55 Ill App2d 480, 488, 204 NE2d 577:

"While it is true, in a bench trial of a criminal case, the trial judge will be presumed to have considered only competent evidence in arriving at the judgment, People v. Robinson, 30 Ill2d 437, 197 NE2d 45, if it affirmatively appears that he considered incompetent evidence prejudicial to the defendant, the judgment will be reversed. People v. Grodkiewicz, 16 Ill2d 192, 157 NE2d 16. The record shows that the trial judge gave weight to the testimony of Steven Hill in his consideration of the charge involving Vernon Hill and further gave weight to the evidence relating to the statement made by Vernon to his mother and grand-

mother concerning the incident with defendant. Since we are unable to determine how much weight was given to this improper evidence, the conviction must be reversed and the cause remanded.

"It is of interest to note at this point that the majority of Illinois Supreme Court decisions on the question of admissibility of evidence in a criminal bench trial hold that the trial judge is presumed to have considered only competent evidence in arriving at his judgment. This line of decisions begins with People v. Reed, 287 Ill 606, 122 NE 806, and continue down to date. Three cases exist, however, which have in no way been commented upon in any case in the Reed line and which hold directly contrary to the Reed line, namely, the trial judge in a bench trial of a criminal case is not accorded the same presumption which is accorded the chancellor in a chancery case that he will consider only competent evidence. See People v. Reichert, 352 Ill 358, 185 NE 585; People v. Arendarczyk, 367 Ill 534, 12 NE2d 2, and People v. Borrelli, 392 Ill 481, 64 NE2d 719."

The defendant, his lawyer, the trial judge and the Assistant State's Attorney knew and discussed the fact that there were three cases involving indictments against defendant pending on the trial calendar of the trial judge. We do not think that under the circumstances the testimony relating to the arrest of defendant was prejudicial. The defendant urges that the trial judge conducted an outside investigation to his detriment. Defendant says that the trial judge was aware of the facts concerning other indictments that were not presented in open court and that if this knowledge was the result of some outside investigation by the judge it is improper, citing People v. McMiller, 410 Ill 338, 342, 102 NE2d 128, and People v. Rivers, 410 Ill 410, 416, 102 NE2d 303. The deliberations of the trial judge are limited to the record and

matters of which he may take judicial notice. In view of the statements of the trial judge we conclude that he was discussing his trial call and the remaining pending indictments against this defendant, with the defendant and his attorney. There is no evidence that any knowledge was acquired by the judge through an outside investigation. The judge was informed of the pending indictments. There is no indication that the court gave weight to any inadmissible evidence in the consideration of the offense charged.

■ A further point urged by the defendant is that he was denied his constitutional right to compulsory process by the failure of proper service. The record shows that there was an attempt to serve Melvin Burrell with a subpoena by having the writ stuffed under the door. The trial judge found this service to be inadequate and postponed the trial for a week. The defendant says that the right to compulsory process is meaningless without the requirement of service and that the two are inseparably interwoven, citing Brewer v. Hunter, 163 F2d 341; United States v. Davenport, 312 F2d 303. The trial took place on the postponed date. At this time the defendant's attorney stated that he was ready to proceed. On the extended date the defendant did not request a continuance in order to secure the presence of Mr. Burrell as a witness. We do not think there is any merit in defendant's point. It is reasonable to assume that defendant either did not consider the testimony of the witness material or failed to exercise diligence to command the witness to appear in court.

■ Detective James Cusack testified that on the evening of July 27, 1962, he showed the defendant the case report for the offense of which he was charged and that the defendant admitted, "You got me, I know you got me," when he realized that the description given the police by his victim identified him as the offender. Defendant says that the admission of this statement

without proper notice being given was reversible error, pointing out that according to Ill Rev Stats 1961, chap 38, § 729, he is entitled to a list of the names and addresses of all persons present at the time such confession was made. The legislative purpose behind these provisions was to provide the accused with protection against unfairness and inadequate preparation by requiring the disclosure, prior to the trial, of the specified information as to confessions and witnesses. People v. Ikerd, 26 Ill2d 573, 188 NE2d 12; People v. Pelkola, 19 Ill2d 156, 166 NE2d 54. These provisions have been held to be mandatory and failure to comply has been held to be reversible error. People v. DuPree, 26 Ill2d 320, 186 NE2d 237; People v. Shockey, 30 Ill2d 147, 195 NE2d 703. The People contend that the statements attributed to the accused were only admissions from which his guilt might be inferred and not a confession within the meaning of the statute, citing People v. Stanton, 16 Ill2d 459, 466, 158 NE2d 47. The People say that the defendant's remarks did not amount to acknowledgment of the guilt of the crime charged and that defendant's trial counsel did not consider the remarks to be a confession, nor did the trial judge consider the remarks to be a confession. The defendant answers this argument by saying there is little difference between the statement "I did it" and "You got me" in light of the fact that the officer was discussing the offense and that the statement, if made, is one from which guilt necessarily follows. We do not think that it is necessary for us to decide whether the statement was a confession or an admission. Assuming that it was a confession, the defendant was given notice of the confession. The defendant's trial attorney stated that he had notice of the statement or confession but that it did not "take place on the 27th." The State's Attorney called attention to the fact that there was no date on the statement. In our opinion the proper statutory notice was given of his statement or confession, within adequate

210

time to prepare for trial. We call attention to Ill Rev Stats 1963 (Code of Criminal Procedure), chap 38, § 121–9(a) which states:

"Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded. Plain errors or defects affecting substantial rights maye be noticed although they were not brought to the attention of the trial court."

We do not think that any substantial right of the defendant was disregarded. We think that the record justified the court in finding defendant guilty beyond a reasonable doubt. Therefore the judgment is affirmed.

Judgment affirmed.

BRYANT and LYONS, JJ., concur.