UNITED STATES of America ex rel. Robert BLEIMEHL, Petitioner-Appellee,

v.

Joseph G. CANNON, Warden, Stateville Correctional Center, Joliet, Illinois, Respondent-Appellant.

No. 74–1479.

United States Court of Appeals, Seventh Circuit.

Argued June 12, 1975.

Decided Sept. 19, 1975.

---

Before CLARK, Associate Justice (Retired),* SWYGERT and CUMMINGS, Circuit Judges.

SWYGERT, Circuit Judge.

The question presented by this appeal concerns the distinction between prejudicial error and a denial of due process of law. We have a situation in which a mug book, prepared by the Berwyn, Illinois, police department, was introduced into evidence over objection in a state criminal trial. The jury was allowed to examine the book including a mug-shot of the petitioner taken five years previously by the Chicago police department. The petitioner claims in a habeas proceeding that the introduction of this evidence was prejudicial error of such magnitude that his right to a fair trial guaranteed by the Due Process Clause was violated. The district judge agreed and granted a conditional writ of habeas corpus ordering the State to retry the petitioner within ninety days or release him from custody. The State of Illinois has appealed from this decision. We reverse.

Before analyzing the legal problems, we state the facts. Robert Bleimehl, the petitioner, was arrested for the crime of strong-arm robbery. Prior to the arrest the victim, Frank Gazarek, was accosted on March 9, 1969 in Cicero, Illinois, by two men, one of whom placed his arm around Gazarek's neck, arresting his motion. Gazarek was then confronted by the other man who remained facing him while the assailant gripping Gazarek removed his wallet. During this time, Bleimehl's neighbor, Leo DiPompeo, was returning home and witnessed the scuffle as he emerged from his car. Upon seeing DiPompeo, the two men ran down the street to a parked auto, got in, and drove up the street. Since the avenue was marked "One Way," the auto was forced to pass by Gazarek and DiPompeo. As it did, Gazarek was able to note two figures inside the auto and identi-

William J. Scott, Atty. Gen., Brian A. David, Asst. Atty. Gen., Chicago, Ill., for respondent-appellant.

Carl T. Robinson, Chicago, Ill., for petitioner-appellee; Robert Bleimehl, pro se.

* Associate Justice Tom C. Clark of the Supreme Court of the United States (Retired) is sitting by designation.

fied the driver as the man who had confronted him. DiPompeo noted the license number, ran to his house, and called the police.

The only positive identification of the assailants was that of the man who confronted Gazarek. DiPompeo not only did not get a good look at the men during the scuffle with Gazarek, but was too preoccupied with reading the license plate numbers to notice the features of the occupants in the escape vehicle. Gazarek was able to see only the face of the man who confronted him and did not catch a glimpse of the person who actually performed the strong-arm.

Following receipt of the complaint, the Berwyn police department ran a check of the vehicle's license number with the Illinois Secretary of State and obtained registration documents identifying the owner of the car as Robert Bleimehl. After a search of their files produced no photographs of Bleimehl, contact was made with the Chicago police department where a photo was located. The photo was obtained and Berwyn police detective Dennis Kovarik placed this photo in a current police mug book and took it to the home of Gazarek. Gazarek was told to look through the book. He quickly selected Bleimehl's picture as the man who had confronted him in the robbery, and also as the driver of the escape vehicle. On the basis of this identification Bleimehl was arrested.

At trial the State's initial witness was Gazarek. After describing the robbery itself, Gazarek identified Bleimehl in court as one of his attackers. After this in-court identification, counsel for the prosecution handed him the "mug book" and asked him to identify the volume as the one which had been presented to him at his home. Defense counsel objected, but the witness was permitted to answer the question. After an identification of the book, a conference was held in the judge's chambers during which defense counsel strenuously objected that admission of the mug book would imply Bleimehl was a criminal. No objection was raised as to the photograph itself. Rath-

er, counsel's objection went to the prejudicial nature of the volume taken as a whole. The objection was overruled, the trial judge concluding that the jury was entitled to see the manner in which the identification took place.

The book was admitted into evidence. Gazarek was asked to page through the volume and, in full view of the jury, selected Bleimehl's photograph from it. After it was removed from the book, Gazarek further identified his initials on the reverse of the picture. Gazarek was then asked to identify the man whose picture he had pulled; he indicated the petitioner.

The petitioner's defense was generally an attempt to cast doubt upon Gazarek's ability to identify his assailant. When the jury retired for its deliberations the mug book and the photo of Bleimehl were taken with them. No limiting instructions were given regarding permissible inferences to be drawn from the exhibits, nor were such instructions requested. No specific statements informing the jury of past criminal activity were made in court by either counsel or witnesses. The jury convicted the petitioner of robbery and he was sentenced to serve a term of three to seven years in the State penitentiary where he is presently confined. The petitioner appealed his conviction. One of his grounds was the claimed improper admission into evidence of the "mug book." The Illinois Appellate Court affirmed the conviction. The Illinois Supreme Court denied a petition for leave to appeal to that court. Subsequently, the habeas petition was filed in the federal district court.

I

 Initially, it must be recognized that mug-shots are generally indicative of past criminal conduct, and will likely raise the inference of past criminal behavior in the minds of a jury. As was noted in *Barnes v. United States,* 124 U.S.App.D.C. 318, 365 F.2d 509, 510–11 (1966): "The double-shot picture, with front and profile shots alongside each

other, is so familiar, from 'wanted' posters in the post office, motion pictures and television, that the inference that the person involved has a criminal record, or has at least been in trouble with the police, is natural, perhaps automatic." Admission of mug-shots, therefore, generally runs headlong into rules of evidence prohibiting the introduction of remarks or testimony regarding the petitioner's bad character or past criminal record. As a general rule, a defendant has a right to have no comment made regarding his character until he raises the issue of his own good character himself. Additionally, he has the right to have evidence of past criminal activity kept from the jury. Evidence of past criminal activity is, therefore, generally inadmissible in a court of law, and its admission will normally constitute prejudicial error supporting the granting of a new trial.

This rule is not ironclad, however, and is subject to exceptions. Evidence tending to show past criminal activity may in certain instances be used to establish motive, intent, identity, guilty knowledge, or credibility where such evidence is directly related to the guilt of the accused. *People v. Booker,* 34 Ill.2d 16, 213 N.E.2d 542 (1966); *People v. Brown,* 64 Ill.App.2d 203, 212 N.E.2d 275 (1965); *McCormick on Evidence,* § 190, p. 447 (2d ed. 1972).

The conflicting interests created by these rules and their exceptions create difficult problems for the trial courts. There do not appear to be any hard and fast guideposts since the context and manner in which such evidence is offered varies greatly. Consequently, rulings as to admissibility tend to become discretionary judgments and often pose difficult questions upon reconsideration. Opposing each other are the prosecution's need to introduce such evidence in order to prove its case, and the defendant's right to be free from the possibility of conviction based on suspicion of crimes never proved during the trial.

II

Introduction of mug-shots has been held to be prejudicial error in the following cases: *United States v. Harrington,* 490 F.2d 487 (2d Cir. 1973); *United States v. Reed,* 376 F.2d 226 (7th Cir. 1967); *United States v. Silver,* 374 F.2d 828 (7th Cir. 1967); *Barnes v. United States,* 124 U.S.App.D.C. 318, 365 F.2d 509 (1966); *United States v. Harman,* 349 F.2d 316 (4th Cir. 1965). *Harrington,* heavily relied on by the petitioner, appears to be the most recent ruling against the admission of mug-shots. The case lists three standards by which to test the propriety of a trial court's decision: (1) the prosecution must have a demonstrable need to introduce the photographs; (2) the photos themselves, if shown to the jury, must not imply that the defendant had a criminal record; and (3) the manner of their introduction at trial must be such that it does not draw particular attention to the source or implications of the photographs.

In *Harrington,* one of the Government's key witnesses was unable to make an in-court identification of the defendant and was consequently shown a set of mug-shots to duplicate a previous out-of-court identification. A controversy between counsel over the admissibility of the photos occurred in the presence of the jury, which included a discussion of how photos should be covered. In applying the three standards, the Second Circuit, while finding a definite need for the photos, reversed the district court on two grounds. First, the court noted that mug-shots by their very nature raise a suspicion of prior criminality, stating that "the preferable course of action when mug-shots are to be introduced would be to produce photographic duplicates of the mug-shots. These copies would lack any incriminating indicia – i.e., inscriptions or identification numbers, and they could also avoid use of the juxtaposed full-face and profile photographic display . . . ." 490 F.2d at 495. Secondly, the manner of their introduction was found to be highly prejudicial.

The jury observed a heated bench conference, an animated judge handling and pointing to photographs, and the delivery of the pictures into the hands of the court clerk, who then quickly tried to convert them into the condition they should have been when they were handed to the judge.

*Barnes,* also cited by the petitioner, ruled against the admissibility of mug-shots on two bases. The defense noted on cross-examination that the witness had initially identified the defendant by photograph. On redirect, the prosecution then showed the photos to the witness who confirmed the identification. Objections were raised and a bench conference was held at which time portions of the photos were covered over and admitted into evidence. In ruling that prejudicial error had occurred, the District of Columbia Court of Appeals countered the Government's argument that the defendant's criminal record had previously been revealed. Such testimony, said the court, "might conceivably have led a juror . . . to hypothesize that the accused had a police record. But defense counsel was not required to pay the price of having defendant's criminal record dramatically and almost unmistakably placed before the jury through the jury's inspection of the mug-shot photograph with its supposed tape 'concealment' of the underlying record." 365 F.2d at 512. *Barnes* was reversed also because there was no need to introduce the mug-shot. The prosecution exhibited an ordinary photo of the defendant at the same time he showed the mug-shot. The court apparently thought the ordinary photo would have been sufficient to fulfill the prosecution's needs without injecting the prejudice created by the police photograph. Additional attention was also directed to the mug-shots by the judge, who, at the close of his instructions, expressed to the jury his reluctance to allow them to view the photos during deliberation because the covering might inadvertently be removed.

The Fourth Circuit declared mug-shots to be inadmissible in *Harman.* There front and profile photos of the defendant bearing the inscription "USPA 7040 115–53" were admitted into evidence in an attempt to impress the jury with the witness' knowledge of the defendant's appearance. The witness, a federal investigator, had viewed Harman only for a matter of seconds at the time of a raid on an illegally operated still. Harman escaped capture and was apprehended a year later. The court emphasized that the Government's case was weak, since no other witnesses were able to verify that Harman was present during the raid. Since the investigator had carried Harman's picture with him while investigating his activity, the photo was important for Harman's identity at the still site. The court, however, found prejudicial error and remanded the case for a new trial. Stating that Harman had a right not to have his character placed in issue since he had not taken the stand, the court found that the prejudice created by the pictures was serious enough to deprive the defendant of a fair trial. The weakness of the Government's position appears to have been an important factor in the court's decision by creating the substantial possibility that the prejudicial effect of the mug-shot might have contributed to the conviction.

Finally, the introduction of mug-shots was also held improper in *Reed.* The basis of this decision was grounded in the prejudice created by the accompanying testimony rather than the photographs themselves. During direct and cross-examination three Government witnesses repeatedly referred to the mug-shots as "photographs of former inmates of the state prison." In addition, Reed's former wife testified that her husband had been "released from prison," and an FBI agent gave misleading testimony indicating that Reed was an escaped convict. We did not reach the question of the admissibility of the photos themselves, but did directly comment on them in two footnotes. Judge Kiley,

writing for the court, noted there was a "grave risk in the introduction of photographs where other evidence is produced or available to show the accused is the person who committed the crime charged," and enunciated a rough balancing test to judge the relevancy of extrajudicial identifications. 376 F.2d at 228–29 nn. 2, 3. The court's instructions considered the reliability of the prior identifications, its fairness, prejudicial effect, and purpose. Admissibility appears to have been more highly favored where the extrajudicial identification was used as substantive evidence rather than evidence to corroborate a witness' testimony.

Admittedly, in the instant case, we have elements which could indicate the presence of prejudicial error. As in *Harrington*, no attempt was made to cover the data which could disclose the existence of Bleimehl's prior criminal record (the photos contained the name of the police department, a number, and the date). Additionally, the mug book and photograph of the petitioner were introduced before Gazarek's ability to identify the petitioner was contested by defense counsel. Officer Kovarik testified that the source of the photographs was the Chicago police department, and repeatedly during trial the volume was referred to as a "mug book.".

Unlike *Reed, Barnes,* and *Harman,* however, the discussion of the admissibility of the mug book did not occur in the jury's presence, but was handled in the judge's chambers. Also, no masking of identifying marks was performed for the jury to see. Both of these elements, present in the other cases, were substantial factors in finding prejudicial error because they called undue attention to the probable existence of prior criminality. Additionally, applying the test stated in *Reed,* use of the mug book here appears to be more in the nature of substantive rather than corroborative evidence. The only identification made of the petitioner prior to trial was photographic. Indeed, the photograph itself is the connecting link between the assail-

ant, the driver of the escape vehicle, and the license plate number submitted to the police by DiPompeo. Finally, the effect of any possible prejudice would seem minimal in light of this positive interrelated identification of the petitioner. We do not have the weak case here that was presented in *Harman.* There, the use of the mug-shot merely corroborated the investigating officer's testimony that the defendant was at the raid by showing the jury that he was familiar with Harman's appearance. As indirect proof of Harman's presence, the balance between prejudice and relevance was much closer than in the case before us. In *Harman,* the mug-shot simply lent credence to the prosecution's case; here it is dispositive of the issue. It does not raise equal amounts of prejudice and proof as did the photo in *Harman.* Indeed, the proof it offers was critical to the State's case. The mug book and photo in question thus had an independent relevancy far beyond their prejudicial effect.

We turn then to those cases holding in favor of admissibility. *United States v. Gimelstob,* 475 F.2d 157 (3d Cir. 1973); *Dirring v. United States,* 328 F.2d 512 (1st Cir. 1964), *cert. denied,* 377 U.S. 1003, 84 S.Ct. 1939, 12 L.Ed.2d 1052 (1964). In *Gimelstob,* a mug-shot was used to verify an extrajudicial identification in response to the defense attorney's challenges. Unlike the case here, the photograph was partially masked over and the existence of the picture had first been raised by the defense attorney. *Dirring* also involved a situation where the prosecution introduced a mug-shot of the defendant to prove a witness' prior identification. The court there ruled that it was within the trial court's discretion to conclude that the photograph's independent relevancy outweighed the prejudicial effect of revealing the defendants' prior record. In addition, the absence of limiting instructions (a fact similar to the case here) was also held not to constitute independent grounds for reversal. The court stated that the defendant was entitled to a limiting ir

struction if he so desired, but he could not complain where none was requested.

██ On balance, it must be admitted that the majority of the courts tend to find prejudicial error in those situations where the mug-shots themselves have actually been admitted into evidence. Most cases holding the other way involve situations which fall short of actual admission of the photos and only concern themselves with testimony referring to their existence. *See United States v. Hines,* 470 F.2d 225 (3d Cir. 1972), *cert. denied,* 410 U.S. 968, 93 S.Ct. 1452, 35 L.Ed.2d 703 (1973); *United States v. Robinson,* 406 F.2d 64 (7th Cir. 1969). But even if it can be said that the admission of the mug book in the instant case constituted prejudicial error, the logic compelling reversal does not appear automatically. The rules of admissibility, though relevant, are not dispositive of the questions presented in a habeas proceeding. All of the standards heretofore articulated related to direct appeals from trials in the federal district courts. They do not involve policy intended to be controlling in cases requesting the Great Writ.

Consideration of a petition for habeas corpus occurs on a level higher than that of the mere review of a trial court's evidentiary rulings. The habeas question is a different one—whether the petitioner's right to a fair trial as guaranteed by the Due Process Clause was violated. Relevant in what this court stated in *United States ex rel. Durso v. Pate,* 426 F.2d 1083, 1086 (7th Cir. 1970): "[only w]hen it must be said that the probative value of such evidence, though relevant, is greatly outweighed by the prejudice to the accused from its admission, [does] the use of such evidence by a state . . . rise to the posture of the denial of fundamental fairness and due process of law."

The reason for this difference (direct appeal versus habeas) finds its roots in the concept of federalism which lies at the heart of our Constitution. Within the perimeters of the Due Process Clause the states are free to establish their own rules of evidence and are exempt from federal oversight except in those instances where errors of a constitutional magnitude have been made. *United States ex rel. Harris v. State of Illinois,* 457 F.2d 191 (7th Cir. 1972); *Grundler v. State of North Carolina,* 283 F.2d 798 (4th Cir. 1960). "[H]abeas corpus is not available to review errors in a state trial, in the conduct of the trial, the admission of evidence, or alleged prejudicial statements in the Courts charge, or by the prosecution, absent a showing that they deprived [the] defendant of a fundamentally fair trial." *United States ex rel. Corby v. Conboy,* 337 F.Supp. 517, 519 (D.C.N.Y.1971). "To hold otherwise would put the federal courts [as] reviewing courts over the courts of the states even when no constitutional errors have been made." *United States ex rel. Harris v. State of Illinois,* 457 F.2d at 198.

There do not appear to be any cases where the federal courts of appeals have dealt with the admissibility of mug-shots in a habeas setting. However, the standards suggested here were discussed in *Ralls v. Manson,* 503 F.2d 491 (2d Cir. 1974) (Lumbard, C. J. concurring), in an appeal from the granting of a habeas petition involving the admission of a defendant's fingerprint card. During examination, the state police fingerprint expert testified that he had obtained the card from the central files of the criminal arrest records in Connecticut. Cautionary instructions were given to the jury at this point, and the jury was removed from the court while the judge denied a motion for a mistrial. The card was later admitted into evidence. Although the court reversed the granting of the writ because the petitioner had not exhausted his state remedies, Judge Lumbard's concurrence reached the issues raised by the fingerprint card. His discussion is especially relevant to our case in that it deals with the district court's reliance upon the *Harrington* standards. *Harrington's* three pronged test, enunciated earlier, also served as the basis for the district judge's decision

to grant Bleimehl's writ of habeas corpus in the district court. In regard to *Harrington's* applicability in a habeas proceeding Judge Lumbard noted:

Even assuming that the district court correctly applied the *Harrington* standard, the problem with its conclusion is that *Harrington,* as well as the other cases it cited, was an instance of a federal court of appeals exercising its supervisory powers over the admission of evidence in the district courts. It goes without saying that in state prisoner habeas petitions the question is a very different one—whether the petitioner's right to a fair trial as guaranteed by the due process clause was violated. 503 F.2d at 497.

The *Harrington* standards relied upon by the district judge appear inapplicable, therefore, in disposing of the question. While violation of them may indicate prejudicial error, the duty of the federal court is not merely to determine if that error outweighed the probative effect of the admission of the mug book. Based upon this court's prior teachings in *Durso v. Pate,* a petition for habeas can only be granted when that effect "greatly" outweighs its evidentiary value. A mere finding of prejudice is not enough. As the United States Supreme Court said in *Spencer v. Texas,* 385 U.S. 554, 562, 87 S.Ct. 648, 653, 17 L.Ed.2d 606 (1967):

To say the United States Constitution is infringed simply because this type of evidence may be prejudicial and limiting instructions inadequate to vitiate prejudicial effects, would make inroads into this entire complex code of state criminal evidentiary law, and would threaten other large areas of trial jurisprudence.

Viewing the facts of the instant case in their totality, we do not believe that it can be said that the resulting prejudice created by the admission of the mug book greatly outweighed its probative value to the jury. Error may have been committed by the absence of limiting instructions, the failure to mask the references to the police

department on the photos themselves, and the introduction of evidence having the effect of alluding to Bleimehl's past bad character. However, the entire thrust of petitioner's defense was geared toward disproving Gazarek's ability to identify his assailant. The fact that Gazarek was able to select Bleimehl's photograph from over one hundred similar pictures, and to have that match up with the license registration numbers submitted by the witness DiPompeo must have impressed itself indelibly in the jury's mind. It disposed of the identification issue and, with it, the case. Its probative value was, therefore, critical. It was also proper for the jury to inspect the mug book in order to evaluate the fairness of the extrajudicial identification. The similarity of the pictures added credence to Gazarek's ability to remember his assailant. The probative value of presenting this extrajudicial identification in court has been recognized in both federal and state cases. *Clemons v. United States,* 133 U.S.App. D.C. 27, 408 F.2d 1230 (1968); *People v. Gould,* 54 Cal.2d 621, 7 Cal.Rptr. 273, 354 P.2d 865 (1960). As was stated in *Gould* :

Evidence of an extra-judicial identification is admissible, not only to corroborate an identification made at the trial, but as independent evidence of identity. . . . [and is to be] admitted regardless of whether the testimonial identification is impeached, because the earlier identification has greater probative value than an identification made in the courtroom after the suggestions of others and the circumstances of the trial may have intervened to create a fancied recognition in the witness' mind. 7 Cal.Rptr. at 275, 354 P.2d at 867. (citations omitted)

In sum, we cannot say that the probative value of the mug book was far outweighed by the resulting prejudice it may have created. Any such prejudice was secondary to the conclusive manner in which Gazarek's testimony pulled to-

gether the evidence submitted by Di-Pompeo and Officer Kovarik.

Accordingly and for the reasons we have stated, we conclude that the district court's order was incorrect. The order is reversed.