**UNITED STATES ex rel. Allen WASHINGTON, Petitioner,**

v.

**Richard DeROBERTIS, et al., Respondents.**

**No. 82 C 4083.**

United States District Court, N.D. Illinois, E.D.

Oct. 28, 1983.

Lee Ann Russo, Coffield, Ungaretti, Harris & Slavin, Chicago, Ill., for petitioner.

Tyrone C. Fahner, Ill. Atty. Gen., Jack Donatelli, Asst. Atty. Gen., (assisted by Christ Stacey, Chicago, Ill., applicant for admission to bar), for respondents.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

This 28 U.S.C. § 2254 ("Section 2254") habeas corpus petition by Allen Washington ("Washington") is before this Court on Washington's motion for summary judgment[1] and a motion, filed by the respondents who hold Washington in custody, for denial of the writ under Rule 5 of the Section 2254 rules. For the reasons stated below respondents' motion is granted and the petition is denied.

---

**1.** This Court expresses its thanks to Ms. Lee Ann Russo, who has rendered exemplary service as counsel appointed to represent Washington pro bono publico. Ms. Russo put Washington's habeas claims in the best possible legal light, though the claims did not ultimately prevail.

996

### Facts and Procedural History

On June 26, 1980 Washington was found guilty of the murder of his young son and sentenced to 40 years in prison. In brief, the following facts were adduced at trial and are relevant to Washington's grounds for appeal in the state courts and in support of the current petition:

1. On September 8, 1978 police answered a call about a missing child, Washington's son. Washington told police he last saw the boy playing in his backyard.

2. Testimony by a private investigator was that on September 24, 1978 Washington told him the boy's body was in a nearby dump. When the investigator found the body and told Washington he would have to inform the police, Washington admitted he had hit his son but said the boy accidentally fell against the bathtub from the force of the blow. Washington assertedly tried unsuccessfully to stop the ensuing bleeding. When the boy died, Washington said he took the body to the basement of his home, washed off the blood and later brought the body to the dump and burned it.

3. Dr. Robert Stein (Cook County's Chief Medical Examiner) testified the child had a fractured skull, missing teeth and chest and rib injuries. He testified the injuries could have been caused by blows from a man's fist, but not by the child's falling and hitting a bathtub.

4. Washington sought to exclude evidence of (a) a prior conviction (on April 16, 1971) for the involuntary manslaughter of his two-year-old daughter and (b) his confession to that crime. In the confession Washington admitted striking his daughter in the chest with his hand and slamming her head on the floor several times. Though the trial court admitted the convictions and statements into evidence, it did not let the jury have the statements during its deliberations. As part of the jury instructions, the trial judge directed the jury to consider the confession only for the purpose of ascertaining whether Washington had the requisite knowledge and intent to commit murder and not for the purpose of determining whether Washington had a propensity to commit a crime such as this. In closing argument the state prosecutor referred to the conviction, calling Washington a "baby killer."

5. Washington also objected to testimony by the child's foster father. In that testimony the foster parent identified the child and said he was in good health and had all his teeth the last time the foster father saw the child two months earlier.

▮▮▮▮▮ Washington's conviction was affirmed by the Illinois Appellate Court on September 9, 1981. Before that court he argued, among other things:

1. Admission of evidence of his prior conviction and the confession to that crime, along with repeated references to that evidence in closing argument as bearing on Washington's propensity to kill children, denied him a fair trial.

2. Testimony by the foster father improperly implied bad conduct on Washington's part, thus denying him a fair trial.

3. All the properly admitted evidence was insufficient to support a murder conviction.

Washington reasserts these grounds on habeas corpus review, arguing the claimed departures from state law deprived him of due process of law as guaranteed by the Fourteenth Amendment.[2]

---

**2.** While the state has not contested Washington's exhaustion of his state remedies, this Court may consider the matter sua sponte. *Davis v. Campbell*, 608 F.2d 317, 320 (8th Cir.1979). Such exhaustion is of course a prerequisite to federal habeas corpus review. See *Duckworth v. Serrano*, 454 U.S. 1, 3, 102 S.Ct. 18, 19, 70 L.Ed.2d 1 (1981) (per curiam). One means (though not the only one) of exhausting state remedies is to have raised at the state appellate level the same claims that form the basis of his habeas petition. *Wilks v. Israel*, 627 F.2d 32, 38 (7th Cir. 1980). Because Washington's state appeal was not couched in federal constitutional terms, *Wilks* (read broadly) might deny him the power to assert any federal constitutional issues what-

## Evidence of the Prior Crime

Washington first claims he was deprived of a fair trial by the admission of evidence of (1) his prior conviction of the involuntary manslaughter of his daughter seven years earlier and (2) his statements regarding his acts at the time of her death. *Lisenba v. California*, 314 U.S. 219, 62 S.Ct. 280, 86 L.Ed. 166 (1941) held federal courts considering habeas corpus petitions do not sit in review of the propriety of state trial court evidentiary rulings, but rather consider only whether such rulings violate due process. To find a due process violation, the federal court must find the improper admission of evidence was fundamentally unfair and fatally infected the trial.

In *Lisenba* the Supreme Court held in part (314 U.S. at 227–28, 62 S.Ct. at 285–86) that in the petitioner's state trial for murder of his second wife, admission of evidence that his first wife died under circumstances similar to those surrounding the death of his second wife did not deny him fundamental fairness. That decision controls here. As in *Lisenba*, Washington has objected to the admission of evidence of circumstances surrounding a death similar to the murder of which he was later accused. In both cases the decedent stood in the same relationship to the accused as the alleged victim.

■ In applying *Lisenba* to the admission of evidence, our Court of Appeals finds a due process violation only if the probative value of the evidence is "greatly" outweighed by its prejudicial effect. *United States ex rel. Bleimehl v. Cannon*, 525 F.2d 414, 421 (7th Cir.1975). Here both the

prejudicial effect and the probative value of the evidence were substantial. Evidence that Washington had slammed his baby daughter's head into the floor several times could surely inflame a jury.[3] But the evidence was crucial to the issue whether Washington knew or should have known that if he struck his child severely he could cause death. Evidence of the details of the strikingly similar prior crime was also necessary to expose to the jury the facts from which it could infer mens rea. Thus the prejudicial effect certainly does not greatly outweigh the probative value; at worst the two factors are well balanced.

■ Washington further contends the prosecutor improperly capitalized on the evidence of the prior crime in closing argument. While some of the comments were in fact inflammatory, they did not rise to the level of "egregious misconduct" as required by *Donnelly v. DeChristoforo*, 416 U.S. 637, 647, 94 S.Ct. 1868, 1873, 40 L.Ed.2d 431 (1974). Furthermore, only one such comment[4] was objected to at trial and the trial judge sustained that objection immediately (Resp.Mem. 7). Under Illinois law all other objections are waived, *People v. Dailey*, 51 Ill.2d 239, 243, 282 N.E.2d 129, 131 (1972), and thus cannot be raised on federal habeas corpus review, *Engle v. Isaac*, 456 U.S. 107, 129, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982).

## Testimony of Foster Parent

■ Washington's second claim is that a fair trial was denied him by admitting testimony the child had been placed in a foster home. He argues such evidence was high-

---

soever on habeas review. Such a denial would be inappropriate here, where (unlike the situation in *Wilks*) petitioner's arguments have changed hardly at all from those argued in his state appeal. Indeed Washington still relies in his arguments on state cases not decided on constitutional grounds. His present contention that the asserted failures to follow state law rise to the level of due process violations is no more than a "variation[] in the legal theory" that does not change the basic claim raised on state appeal. *Picard v. Connor*, 404 U.S. 270, 277, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971). See *Macon v. Lash*, 458 F.2d 942, 948 (7th Cir.1972).

3. As already noted, the trial judge instructed the jury to limit its use of the prior crime evidence to the issue of Washington's intent and knowledge. Such instructions are ordinarily deemed to cure any prejudice resulting from the jury's exposure to a prior crime. See *Allen v. Snow*, 635 F.2d 12, 15 (1st Cir.1980).

4. At one point the prosecutor said:

Somebody gave him a break in 1970. He copped out in 1970 to involuntary manslaughter.

ly prejudicial because it suggested to the jury he was an unfit father. In response the state asserts the evidence was necessary to identify the child and establish that he was in good health and not missing any teeth just prior to his death. Again an evidentiary ruling is involved, bringing into play the balancing process described in the preceding section of this opinion.

It appears the probative value of the foster father's testimony is slight and may even be argued to have been outweighed by its prejudicial effect. Because the foster father had not seen the child for two months before his death, his testimony might not have been highly probative in establishing the child's identity and health.[5] But on the other side of the coin, the disclosure of the foster father's existence was marginally prejudicial at worst. No comment on the relation was made by the state, and the trial judge correctly noted (in ruling on the evidence, not in remarks to the jury) the foster care arrangement could have been made for many reasons other than misconduct of Washington.[6] Wherever the scales may have tipped on his minor bit of evidence, its prejudicial effect (if any) certainly did not "greatly outweigh" its probative value as required by *Bleimehl.*

### Sufficiency of the Evidence

Washington's final contention is that if the allegedly improper evidence of manslaughter and foster care were disregarded, the remaining evidence would be insufficient to support a murder conviction. That argument dissolves with this Court's finding that the evidence at issue was admitted without violating Washington's due process rights. Indeed given the extremely high burden imposed by *Jackson v. Virginia,* 443 U.S. 307, 312, 99 S.Ct. 2781, 2785, 61 L.Ed.2d 560 (1979), there is a serious doubt Washington could prevail on

this ground even if the challenged evidence were ignored—but that is an issue that need not be resolved.

### Conclusion

Washington's arguments are non-persuasive, and his motion for summary judgment must be denied. This Court denies his petition for a writ of habeas corpus, and this action is dismissed with prejudice.

---

**5.** On the other hand, there is nothing before this Court to support Washington's naked assertion (Petr.R.Mem. 6) that "testimony regarding the child's health immediately prior to his death could have been elicited from other individuals who were available to testify."

**6.** Under the ruling already discussed the jury had far stronger evidence of Washington's unfitness as a father: the killing of his daughter. All the same, that would not be a legitimate reason for allowing cumulative evidence of a seriously prejudicial nature—but the matter under discussion simply does not fit that description.