Lorraine C. Anderson, Plaintiff-Appellant, v. Universal Delta and Illinois State Toll Highway Commission, Defendants, Universal Delta, Certain Defendant-Appellee.

Gen. No. 50,196.

First District.

December 13, 1967.

Rehearing denied January 15, 1968.

John G. Phillips, of Chicago (Jones & Clark, Vincent M. Clark, of counsel), for appellant.

Doyle, Berdelle & Tarpey, and Jerome H. Torshen, of Chicago (Leo J. Doyle, Jr., and Jerome H. Torshen, of counsel), for appellee.

MORAN, P. J.

Plaintiff appeals from a judgment of the Circuit Court of Cook County, Illinois, in favor of the defendant in an action for personal injuries.

The plaintiff was driving in a westerly direction on Willow Road near the Toll Road in Cook County, Illinois, on March 5, 1959. It had been snowing for some time and there was snow or slush on the highway. As she reached the west end of the Willow Road overpass of the toll road, her automobile swerved to the left, turned around facing back in an easterly direction, traveled a distance of fifty feet, and went off the road, rolling over and down an embankment. She was thrown from the automobile and when help arrived, she was lying in a ditch with the automobile on top of her. She suffered a severe injury to her right leg.

Guardrails had been erected on the south side of the overpass, while on the north side only I-beams had been installed to which about half of the guardrails had been attached. The plaintiff testified that prior to the swerving of her automobile, she felt the right front wheel hit something and that after traveling about fifty feet and turning around, she saw opposite to her left front wheel a guardrail extending into the road about one or two feet. She testified that she did not know what the wheel hit, but that she assumed it was the guardrail.

The testimony concerning the presence of loose guard-rails on the shoulder of or on the road itself is conflicting. Mr. Siars, who was driving in an easterly direction on Willow Road and who observed the plaintiff's automobile leave the road, testified that he had crossed the road to help the plaintiff and that he did not remember seeing anything on the road or on the shoulder, other than snow. Mrs. Siars testified that she walked over to the northern edge of the road and did not see any guardrails on the ground.

Mr. Juern, a member of the ambulance crew which came for the plaintiff, testified that he did not remember whether there were any loose guardrails on either shoulder. Mr. Simpkins, the other member of the ambulance crew, testified that he did not see any guardrails on the shoulder of the road.

Sergeant Milton Chasen, a policeman who came to the scene, testified that there were loose guardrails lying on the north side of the highway; that in covering the accident he parked his car in the middle of the road and had to step over guardrails to get to the shoulder of the road. Officer Hoard, another policeman, testified that he observed guardrails on the shoulder of the road west of the scene of the occurrence.

Mr. Keating, who observed the plaintiff's automobile leave the road, testified that there were guardrails lying on the shoulder, that they were thrown all over; that some may have been only two inches from the road, and that one would have to walk over them on the shoulder of the road. Finally, the plaintiff's husband testified that on a visit to the scene of the occurrence with Mr. Moehling, a neighbor and friend, on the day of the occurrence, he and Mr. Moehling saw guardrails lying around.

The plaintiff alleged that Universal Delta, who was engaged in erecting and installing posts and guardrails pursuant to an agreement entered into with the Illinois

State Toll Highway Commission, negligently permitted guardrails to remain upon the traveled portion of the public highway, failed to inspect, failed to warn motorists, failed to fasten the guardrails, and failed to construct the highway properly, and that as a result of one or more of the acts charged the plaintiff suffered serious injuries.

The jury returned a verdict in favor of the defendant. The trial court denied the plaintiff's motion for a new trial and entered judgment for the defendant, from which the plaintiff prosecutes this appeal.

The plaintiff argues that the case was a close case and that the verdict of the jury resulted from prejudice engendered by the improper conduct of the defense counsel in that (1) he commented in closing argument upon the failure of plaintiff to call Mr. or Mrs. Moehling to testify, when he himself had called Mrs. Moehling to testify as a witness for the defense; (2) he argued and referred in his closing argument to facts not in evidence and to evidence which had been stricken by the court; (3) he commented on the exclusion of a certain witness; (4) he cross-examined certain witnesses by use of an inadmissible police report; and (5) he failed to offer evidence to prove assertions in his opening statement.

The plaintiff's husband testified that he and Mr. Moehling had gone to the scene of the occurrence on the day after the occurrence and that they had both seen guardrails on the shoulder. The defendant called Mrs. Moehling as a defense witness, and she testified that she and her son had accompanied plaintiff's husband and Mr. Moehling. She was not questioned about the presence of guardrails.

In his closing argument defense counsel argued that "you are entitled to believe, ladies and gentlemen, and you are entitled to understand that because counsel (for the plaintiff) did not produce these people they would not substantiate— . . . that Mr. and Mrs. Moehling would testify that there were no guardrails on the shoulder."

The plaintiff objected, but the court merely instructed counsel to proceed.

In Brichacek v. Hampton, 54 Ill App2d 284, 203 NE2d 737 (1964), at 297, the court held that:

> "Where a witness is known to the plaintiff and has been interviewed by him, is subsequently subpoenaed and has testified on behalf of the defendant in the trial, it is the height of absurdity to say that counsel for the defendant would be entitled to comment on the failure of the plaintiff to produce the witness. . . . When the witness testified in open court there is no place for (an inference) . . . that the testimony of the witness would be against the plaintiff."

See also Mitchell v. Four States Mach. Co., 74 Ill App2d 59, 220 NE2d 109 (1966).

■ There are a number of allegations of error in commenting upon facts not in evidence or upon evidence which has been stricken by the court. First, the defendant called Dr. Smith to testify. After interpreting some X rays, he testified over objection concerning the treatment afforded the plaintiff, even though he had never examined her. At the conclusion of his testimony, the court ordered all of his testimony, except that dealing with his interpretation of the X rays, to be stricken. Then, in his closing argument, the defendant referred to the stricken testimony, emphasizing that:

> "And first of all, I should like to mention that at least if Doctor Smith did nothing else he furnished another opinion to you ladies and gentlemen. He furnished another opinion to Mr. Phillips. He furnished another opinion to Mr. and Mrs. Anderson, which certainly makes the future of this very unfortunate incident much brighter than Mr. Phillips and his doctors would have you believe. . . .
>
> "But I do not think that a person who has been experienced in medicine as Doctor Smith and who

knows these conditions and who has had these operations before whereas Doctor Hall did not testify that he had performed any such operation before, I think it is worthy of consideration of Mr. and Mrs. Anderson and also Mr. Phillips. This is the only reason for producing Doctor Smith."

No objection was made to this argument, and since we do not consider these remarks so highly prejudicial as to require intervention by the trial court in the absence of objection, we do not consider this alleged error.

Second, it appears that on January 12, 1962, defendant served answers to interrogatories on plaintiff, listing the names of twelve employees who worked on the toll road during the week of the occurrence. On April 16, 1962, plaintiff served on defendant additional names, including Mrs. Moehling, Mr. Keating, Mr. Juern, Mr. Simpkins, Mr. Siars, and Mr. Sherry. On April 24, 1962, defendant filed supplemental answers, including the names of Mr. Juern, Mr. Simpkins, Mr. Hoard and Mr. and Mrs. Siars.

In his argument to the jury, the defendant stated: "Ladies and gentlemen, I submit to you that we have established by the only evidence that we have which is the evidence which we furnished really to the plaintiff and who used it—." The trial court then sustained the plaintiff's objection, noting thereafter that "it isn't too material at this point as to who gave what first. Let's get on with the arguments."

Third, the trial court sustained the plaintiff's objection to the following comments by the defendant during his closing argument:

"How are we going to reconcile the fact that Mrs. Anderson is going to have a collision with this guardrail which is there unexplainably when other cars have been down that road that day. They didn't have a collision with it. They didn't have an accident."

110

Finally, the trial court sustained the plaintiff's objection to the following comments by the defendant with regard to a photograph taken ten days after the occurrence: "Well, now, here is one of the pictures taken. Plaintiff's Exhibit 5. And look at the stone that is on the shoulder of that road."

■ It is well established in Illinois that it is improper in closing argument to make reference to matters not in evidence or to comment upon evidence which has been excluded or stricken. In Mattice v. Klawans, 312 Ill 299, 143 NE 866 (1924), the court emphasized, at 309, that "it is error sufficient to reverse a judgment to permit counsel to state, against objection, matter not in evidence and pertinent to the issue or to assume arguendo facts to be proven when they are not. Appel v. Chicago City Ry. Co., 259 Ill 561 (1913); Vujovich v. Chicago Transit Authority, 6 Ill App2d 115."

During the trial, a defense witness, Mr. Glaros, was found incompetent to testify. In his closing argument, the defense counsel commented on the court's exclusion of this witness, when he noted that plaintiff's attorney "said no one was here from Universal Delta. The person that was here was Mr. Glaros who counsel objected to testifying." The plaintiff objected; defendant's counsel added, "This is the fact," and the trial court sustained the objection.

■ It has been reiterated many times that "it is utterly improper for counsel in arguing to the jury to refer to the ruling of the trial court rejecting evidence, and this is true where the ruling of the trial court was or was not in error." Ryan v. Monson, 33 Ill App2d 406, 179 NE2d 449 at 424–425. Crutchfield v. Meyer, 414 Ill 210, 111 NE2d 142; Jacobson v. National Dairy Products Corp., 32 Ill App2d 37, 176 NE2d 551.

During the direct examination of Sergeant Chasen by the plaintiff, the witness did not remember exactly when he had received a call to investigate. He then said, "The

time is on the accident report. If you have it there I could—it's around about ten-fifty; approximately ten-fifty," at which the defense counsel interjected, "Here is a photostat. It's ten-thirty." The plaintiff made an objection and the court requested counsel to proceed.

During cross-examination, Sergeant Chasen testified that he had asked the plaintiff many questions at the hospital and that she had given quite a few incoherent answers. Then, over objection, the witness testified that he had not made a statement in the report that she was incoherent.

Finally, during his cross-examination of Officer Hoard, defense counsel asked the court to request the witness to return on Monday morning for further cross-examination based upon a previously written statement. The defense counsel indicated that the witness had been subpoenaed by the defendant to appear on Monday. Over the objection of plaintiff, the court reopened plaintiff's case and allowed the further cross-examination. However, instead of making reference to the previous statement, defense counsel began by questioning Officer Hoard about the police report.

■ In Hinnerichs v. Galbraith, 40 Ill App2d 433, 189 NE2d 760, the court emphasized that detailed cross-examination from a police report is improper where it brings before the jury the contents of the report, which could not itself be admitted. The court cited Stone v. Warehouse & Terminal Cartage Co., 6 Ill App2d 229, 127 NE2d 260, wherein the court recognized that it was proper to show that a report was contradictory to a witness's testimony, but improper to bring the contents of a report before the jury since the document itself could not be admitted.

In the present case, the effect of defendant's use of the police report was the presentation of matter contained in the report to the jury. There was no attempt to use the report for impeachment.

In his opening statement, the defendant indicated that the evidence would show that "there were no loose guardrails lying on the north side of the road, either on the road or the shoulder of the road" and that there were loose guardrails on the south side of the road. The plaintiff argues that the defendant failed to produce any evidence to support the assertions in his opening statement.

However, the witnesses at the scene of the occurrence testified and the testimony creates a question of fact as to whether there were guardrails on the south side of the road. The defendant's statements were not improper under these circumstances.

We agree with the plaintiff's contention that this case is a close case. There is evidence in the record to support both a verdict for the plaintiff and a verdict for the defendant. The evidence concerning the presence of guardrails on the road or on the shoulder conflicts. Sergeant Chasen saw guardrails on the road and on the shoulder. Officer Hoard saw guardrails on the shoulder, but not on the road. Mr. Siars could not remember seeing guardrails on the road or the shoulder. And Mrs. Siars did not see any guardrails.

In Bulleri v. Chicago Transit Authority, 41 Ill App2d 95, 190 NE2d 476 (1963), at 100, the court emphasized that:

> "It can thus be seen that the evidence was in sharp conflict as to the facts bearing on the central issue of negligence. In consequence, the jury might have determined this issue either way, and, in further consequence, it is important that the jury not be influenced by any improper conduct by counsel so prejudicial as to deprive either party of a fair trial."

This statement finds support in Mattice v. Klawans, supra, and in Owen v. Willett Truck Leasing Corp., 61 Ill App2d 395, 209 NE2d 868 (1965). In Appel v. Chicago

City Ry. Co., 259 Ill 561, 102 NE 1021 (1913), at 568, our Supreme Court emphasized that "the questions to be determined are, therefore, whether the improper argument was of such a character as was likely to prejudice the defendant, and if so, was the verdict so clearly right that a new trial ought not to be granted because of such prejudicial argument."

█ We have already decided that this was a close case. We also agree with the court in Bulleri v. Chicago Transit Authority, supra, when it said that "the cumulative effect of these arguments in combination was grossly prejudicial and, in our opinion, requires a new trial."

For the foregoing reasons, the judgment of the Circuit Court of Cook County, Illinois, is reversed and the cause is remanded for a new trial.

Reversed and remanded.

EBERSPACHER and GOLDENHERSH, JJ., concur.