THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GEORGE CONNORS, Defendant-Appellant.

First District (2nd Division)   No. 78-2079

Opinion filed March 18, 1980.

Ralph Ruebner and Alan D. Goldberg, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, James S. Veldman, and Robert J. Clifford, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Following a jury trial, defendant, George Peter Connors, was found guilty of the armed robbery of Alonzo Weems and sentenced to 6 to 12 years in the penitentiary. On appeal defendant raises three points of error in the trial court proceedings and contends that each was sufficiently prejudicial to mandate the reversal of his conviction. He first objects to the admission of evidence concerning a second robbery, perpetrated earlier the same day as the crime for which he was tried here. On this same issue, he asserts that a jury instruction which failed to limit the jury's considerations of the other offense compounded the error. He also claims two instances of reversible error in regard to the comments of the prosecutor during closing arguments: first, when the prosecutor suggested to the jury that they could draw the proper conclusion from matters excluded under the rules of evidence; and second, when the prosecutor commented on the defendant's failure to testify.

On January 18, 1977, at about 11:35 p.m., Alonzo Weems was in the 100 block of North Lotus, stepping from his car, when he was approached by a man wearing a greyish wool cap and dark jacket and holding a small caliber blue or black automatic gun. The man approached Weems and stated "don't make me shoot you."

Weems testified that the lighting was good, and the robber, whom Weems identified as defendant both at a lineup prior to trial and later in court during the trial, faced him for 15 to 20 seconds. Weems stated that he tried to walk away but defendant grabbed his arm and forced him into the rear of a gangway between two houses. Defendant asked Weems where his money was. When Weems replied that it was in his coat pocket, defendant took the money and asked that the coat, gloves and jewelry also be removed. After telling Weems not to look back, defendant gathered these items and a wallet and ran toward the street. The whole incident encompassed about 1½ to 2 minutes.

Weems described the coat as three-quarter length, red leather with four pockets, and containing a tag that said tailored for Alonzo Weems. The wallet was also distinctive with the words G and G Production printed on it in gold. He described the robber as 5'10" to 5'10½" tall, and about 145-150 pounds. Weems also testified that as the first man approached the car, Weems saw another man about 20 to 25 feet away. The individual never came any closer, however, and Weems was unable to identify him any more specifically than that he was about 6' tall.

On cross-examination, Weems stated that the first robber was 5'7" to 5'8" tall. He did not remember what kind of car he was driving or specifically where in the city he had been for the three hours prior to the robbery since he had been lost.

At this point in the trial, following Weems' testimony and before police witnesses were called, the defense made a motion in limine, objecting, as it had during opening statements, to the introduction of testimony concerning a crime other than the one for which defendant was on trial. During his opening statement, the assistant State's Attorney had commented in relation to expected testimony by the police officers:

> "[T]hey will also tell you that they were in the area in the first place for an armed robbery that had occurred at about 7:30 that evening or about four hours before this one and they were looking for a specific car that was taken and that [sic] 7:30 armed robbery that car being a '65 Oldsmobile with a certain license number 76 Illinois—JE 8957 I think was the number."

As these statements were made, the defense objected and, when the objection was overruled, made an offer of proof. The defense argued that the automobile robbery was unrelated to the robbery of Alonzo Weems. The court asked the assistant State's Attorney the basis for the introduction of the evidence. He responded that it was incident to the arrest and that it indicated a plan, *propensity*, or identification of the offender. The trial court then overruled the defense objection.

The second objection to this evidence occurred immediately prior to the testimony of the second prosecution witness, Officer Cannon. This

motion in limine focused on the improper use of a police officer to establish by hearsay defendant's commission of another crime. Defense counsel reiterated that although the door had been opened to such evidence because of the prosecutor's opening statement (and presumably the court's rulings on such evidence), if the State was going to use the prior crime to establish motive, intent, or whatever, the specific act would need to be proved by competent evidence. The defense also repeated its assertion that the prior crime was irrelevant to the issues in this case and the prejudice to defendant far outweighed any probative value it might have. The court ruled that the fact that the car was stolen had to be established by direct testimony but that "If they say, reported to have been stolen so that explains the reason why [the police officers] are viewing the defendant, I'll permit that—because I think that is probably admissible."

Officer Cannon testified that on the day of the robbery, he and his partner went to the area of 165 N. Pine because they heard a radio call of the Weems robbery, which had just occurred at 122 North Lotus. They observed a black or brown Oldsmobile parked on the corner of Pine and West End, about a half block from the North Lotus location. Two male Negroes exited the car, passing through the headlights of the police vehicle. The officer recognized one as a man known as "Pete" and saw that he was carrying a red leather coat over his arm and had a cream colored knit cap on his head. As they drove past the Oldsmobile the officer noticed that it fit the description of an automobile stolen in a robbery earlier in the day. Defense counsel objected and, after being sustained, moved at sidebar for a mistrial. This motion was denied. The prosecutor renewed his questioning: "the vehicle in question was reported stolen in an earlier armed robbery, is that not correct?" Once again, an objection was raised and sustained; a motion for a mistrial was again made. The court stated that it would hold the motion in abeyance until the State put on direct, admissible evidence tending to show modus operandi.

Following the sidebar, the prosecution once again asked about the automobile. The officer responded that he had noticed the vehicle because of a radio message earlier that day. Once again, an objection was raised and overruled. Officer Cannon testified that the license number was verified as that of the stolen car. Backup cars were requested. A description also came over the radio of the two robbers of Alonzo Weems; five foot seven or eight inches tall, male Negroes, dark clothing, with one of the men wearing a light colored skull cap. The items taken from Weems were also described.

Officer Cannon saw the two men enter an apartment building across from the car and emerge from it about 10 minutes later. When the men

returned to the vehicle, now verified as stolen, the officers converged on car. Defendant left the automobile and started towards the building, but was immediately arrested. Officer Cannon then went to the apartment building, which was approximately seven stories with 40 apartments on each floor. Both officers proceeded to an apartment on the second floor and were allowed to enter after they told the man who opened the door that they were investigating a robbery. A red leather coat was found in the apartment with a .25 automatic in the right front pocket. A wallet with Alonzo Weems' identification in it was also discovered.

Officer Hoffman, Cannon's partner on the night in question, testified next. His testimony substantially mirrored that of Cannon, but he added that he took the other man in the car with defendant into custody. Hoffman had a conversation with the second suspect, Williams: "I asked him where he just come from and where the coat had been taken to." The assistant State's Attorney then asked, "Officer, did the man you're talking about as Mr. Williams answer that question, just tell me, yes, or no?" Hoffman answered, "Yes sir," and the assistant State's Attorney continued, "Based on the answer you gave me to that question where, if anywhere, did your partner go?" Hoffman answered: "Room 207."

Cleveland Carr was called next by the prosecution. He testified that on January 18, 1977 (the same day as the Weems robbery), at 7:15 p.m., he was getting into his car, a 1965 Olds, at 22 South Cicero, when a man stuck a gun in his back. The robber told Carr to lie down in the snow. Carr identified defendant as the robber and stated that another man was also present. Carr stated defendant informed him that if he moved, he would be shot; both robbers then drove away in Carr's vehicle. Following the prosecution's direct examination, defense counsel stated that pursuant to prior objections, there would be no question at that time.

Following a stipulation of defendant's age (28 at the time of trial), the State rested. The defense called its only witness, Officer Stanley Pasko. Pasko was one of the officers who responded to the Weems incident. He testified to the description in the police report: male, Negro, 20 to 25 years old, 5'7" and 145 pounds. The defense then rested.

Both sides agreed to the jury instructions. Closing arguments were presented. During the course of his argument the assistant State's Attorney commented:

> "Officer Hofmann went on to state that he then asked that individual he was talking to; Willie Williams, where the coat that George Connors was carrying, and Officer Hofmann stated that he responded to that question.
>
> Immediately after responding to that question the Officer went to Apartment 207.

Ladies and gentlemen, there are rules of evidence which prohibit us from introducing certain evidence.

MR. GERAGHTY: Objection.

THE COURT: Objection overruled. You may proceed.

MR. SCHLEE: We can only get in legitimate testimony. It is for you people to decide, for you people to draw the proper conclusion that may be drawn."

After reviewing the testimony of each state witness, including that pertaining to the stolen vehicle, the prosecutor asserted:

"We have heard further testimony from a person by the name of Cleveland Carr. Cleveland Carr testifies that yes, it was his car that was stolen at approximately 7:15 on that same evening, a 1965 four-door Oldsmobile, I believe he said, the same car Officer Cannon described as being the one that was taken in the armed robbery, and the reason they first drew attention to Mr. Connors. Ladies and gentlemen, the testimony of the people who have testified here is uncontroverted, uncontradicted. You have heard absolutely no one tell you anything else."

After arguments were completed, the jury was given instructions, among which was the following:

"Evidence has been received that the defendant has been involved in a crime other than that charged in the information. This evidence has been received solely on the issue of the defendant's identification, presence, intent, motive, design and knowledge. This evidence is to be considered by you only for the limited purposes for which it was received."

The jury found defendant guilty and his post-trial motion for a new trial was denied.

■■ ■ As a general rule evidence of extra-indictment offenses is inadmissible. Nevertheless, where such evidence is relevant to an issue in the case, tending to show motive, intent, identity, absence of mistake or modus operandi, it may be admissible. (*People v. McDonald* (1975), 62 Ill. 2d 448, 455, 343 N.E.2d 489.) Where it is offered solely to show defendant's propensity to unlawful acts, however, it is sufficiently prejudicial to be considered reversible error. (*People v. Gleason* (1962), 36 Ill. App. 2d 15, 183 N.E.2d 523.) In determining admissibility, the actual need for the evidence and its convincingness and strength is weighed against the "degree to which the jury will probably be roused by the evidence to overmastering hostility." (*People v. Butler* (1971), 133 Ill. App. 2d 299, 302, 273 N.E.2d 37.) Resolution of the conflict thus depends on whether the evidence of another crime is so closely connected with the main issue that to establish the one tends to prove the accused guilty of

the crime for which he is being tried. *People v. Whitley* (1974), 18 Ill. App. 3d 995, 1001, 311 N.E.2d 282.

■■ The State contends that evidence of the car theft was relevant and admissible on a number of grounds—identity, design, and proximity, but properly abandons the trial assistants' "propensity" argument. Identity was the key issue at defendant's armed robbery trial and common design or modus operandi, which the State attempted to show by Carr's testimony, was urged to enhance and substantiate Weems' identification. If these two crimes were indeed so identical as to "earmark" each as the crime of one man then the test of modus operandi was met and the evidence was properly admitted. (*People v. Osborn* (1977), 53 Ill. App. 3d 312, 320, 368 N.E.2d 608, *cert. denied* (1978), 439 U.S. 837, 58 L. Ed. 2d 134, 99 S. Ct. 122.) In *Osborn*, the defendant used the pretext of a newspaper "help wanted" ad to gain contact with each victim. He would contact the women ostensibly to employ them, but the relationship would soon take on social and personal implications. He would arrange interviews and consultations for the evening hours and would then use physical force to attempt sexual relations with the women, seizing each by the throat. *Osborn* held that similarities in the method of each incident established common design or modus operandi so that identification testimony of an earlier victim could be used in an unrelated trial. *People v. Tranowski* (1960), 20 Ill. 2d 11, 169 N.E.2d 347, *cert. denied* (1960), 364 U.S. 923, 5 L. Ed. 2d 262, 81 S. Ct. 290 (strikingly similar scheme or design in same place at same time); see also *People v. Bennett*, (1973), 9 Ill. App. 3d 1021, 293 N.E.2d 687; *People v. Lindren* (1979), 79 Ill. 2d 129.

In the instant case, the theft of Carr's vehicle occurred four hours and six blocks from the Weems robbery. The State has attempted to show on appeal, although not arguing such below, enough similarities in the two crimes to invoke the modus operandi exception. The similarities that both happened at night, with a gun, near the victim's car are insufficient to show modus operandi. Similarly the statements made to each of the victims—"Don't make me shoot you" and "if you move I'll shoot"—are common to crimes in general, and not so distinctive as to earmark each as the conduct of the same perpetrator.

The State has also argued that the car theft was accomplished to facilitate the Weems robbery and as such each crime was really part of one transaction and common plan. Disregarding for the moment the very real problem of passage of time (four hours between each crime), Weems was specifically asked at trial if he saw a car. He stated that he did not; he did see another man standing about 20 to 25 feet away. The concept of the getaway car that the State has advanced for the first time on appeal

has no support in the record, especially since defendants were arrested about one block from the Weems robbery.

Our supreme court in *People v. Romero* (1977), 66 Ill. 2d 325, 362 N.E.2d 288, refused to create a new exception to the other crimes rule where the identification evidence merely served to enhance the credibility of the witness in the crime at issue. Although the State here has not urged enhancement as a rationale for the admission of Carr's testimony, in reality, such was the nature of his testimony. In *Romero*, as here, the trial court permitted police officers to testify to events which indicated that defendants were involved in other offenses. *Romero* held that where the other crime did not facilitate the crime at issue and the events relevant to the subject crime were not of themselves implausible without the details of the second crime, the testimony was inadmissible. (66 Ill. 2d 325, 331-32; compare *People v. Brown* (1962), 26 Ill. 2d 308, 186 N.E.2d 321.) Because there was not an affirmative showing of lack of prejudice in *Romero*, the supreme court remanded for a new trial. 66 Ill. 2d 325, 332.

■■ It has repeatedly been held, in a variety of contexts, that "[u]nder our concepts of a fair and impartial criminal trial, it is elementary that a defendant, no matter how reprehensible his crime or how black his history of past misdeeds, is entitled to have his guilt or innocence determined solely with reference to the crime with which he is charged." (*People v. Gregory* (1961), 22 Ill. 2d 601, 603, 177 N.E.2d 120; *cf. People v. Curry* (1975), 25 Ill. App. 3d 637, 323 N.E.2d 778 (police testimony that defendant was recognized because of outstanding rape warrants unrelated to case at issue resulted in prejudicial picture of defendant); *People v. Jenkins* (1973), 10 Ill. App. 3d 166, 294 N.E.2d 24 (police testimony that defendant was arrested for unrelated crime reversible error); see also *People v. Williams* (1966), 72 Ill. App. 2d 96, 218 N.E.2d 771.) Accordingly, unless the evidence of the theft of Carr's vehicle was relevant to some issue other than defendant's propensity for criminal conduct, it should not have been allowed before the jury, particularly compounded as it was by the confusing, inexplicit jury instruction. In the case at bar, the jury was informed that the stolen car was the impetus for the defendant's arrest. It would have been sufficient for the officer to testify that he recognized "Pete" and soon thereafter received a description of the Weems robber which matched that of defendant. The details of the other crime and the absence of connecting facts which would bring it within one of the exceptions to the other crime rules made its introduction error. (*People v. Butler* (1971), 133 Ill. App. 2d 299, 273 N.E.2d 37.) The jury instruction concerning such evidence, containing as it did all of the possible exceptions to the other crimes rule, magnified the

error. It did not serve to limit the jury's use of such evidence and failed to convey the proper emphasis of the instruction—that such prejudicial evidence was restricted in value. Although the instruction was not properly objected to prior to going to the jury, under Supreme Court Rule 451(c), we may consider it on appeal where the interests of justice demand. (Ill. Rev. Stat. 1977, ch. 110A, par. 451(c); *People v. Jenkins* (1977), 69 Ill. 2d 61, 370 N.E.2d 532.) It must be stressed, however, that this is not a case where the instruction was merely improperly broad. (Compare *People v. Weathers* (1974), 23 Ill. App. 3d 907, 320 N.E.2d 442, *rev'd on other grounds* (1975), 62 Ill. 2d 114, 338 N.E.2d 880.) Instead, the instruction served to increase the prejudice resulting from the inflammatory admission of testimony concerning the armed robbery of Carr's vehicle. (See *People v. Richards* (1978), 64 Ill. App. 3d 472, 474, 381 N.E.2d 307.) Thus, its use was error.

■■ The second and third issues raised by defendant relate to alleged prosecutorial misconduct. Defendant contends that his right to a fair trial was impinged by the prosecutor's comments on inadmissible evidence. It is well established that a prosecuting attorney may not comment on facts not in evidence, especially where those facts are inadmissible. (See *People v. Donaldson* (1956), 8 Ill. 2d 510, 518, 134 N.E.2d 776.) The alleged prejudicial comments occurred during closing arguments when, in reviewing the evidence, the assistant State's Attorney noted that although the jury was not allowed to hear the co-arrestee Williams' response to Officer Hoffman's question because of the rules of evidence, they could infer its content. This comment, suggesting an open-ended inference, was highly improper. (See, *e.g., People v. Burton* (1978), 63 Ill. App. 3d 915, 380 N.E.2d 929.) To suggest to a jury that they can not hear hearsay as evidence, but they can infer it for use against defendant, puts defendant in the difficult position of perhaps being better off to have allowed the hearsay in. (See also *People v. Mwathery* (1968), 103 Ill. App. 2d 114, 122, 243 N.E.2d 429.) Further, the judge's overruling of the defense objection, and the prosecutor's continued reference to suppression under the rules of evidence, increased the prejudicial impact of the argument. See generally *People v. Hovanec* (1976), 40 Ill. App. 3d 15, 351 N.E.2d 402; *cf. Anderson v. Universal Delta* (1967), 90 Ill. App. 2d 105, 111, 234 N.E.2d 21 (" 'it is error sufficient to reverse a judgment to permit counsel to state, against objection, matter not in evidence and pertinent to the issue or to assume arguendo facts to be proven when they are not' ").

The State cites *People v. Bracy* (1973), 14 Ill. App. 3d 495, 302 N.E.2d 747, for the proposition that although the prosecutor's assertion that he was precluded by the rules of evidence from introducing certain evidence was questionable, it was not reversible where the evidence was

overwhelmingly against the defendant. We would agree with this statement as a general proposition (see generally *Chapman v. California* (1966), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824, but would note that in *Bracy* there are several distinguishing factors. First, there is no indication that an objection was made and overruled, in effect judicially validating the prosecutor's suggestions to the jury. (Compare *People v. Sanders* (1976), 37 Ill. App. 3d 236, 240, 345 N.E.2d 757.) Further, and most importantly, the prosecutor's comments in *Bracy* were made during rebuttal, in direct response to defense counsel's argument. Additionally, the evidence referred to in *Bracy* was a paper bag containing the proceeds of the robbery about which testimonial evidence had already been heard. Here, in contrast, the prosecutor's comments concerned possible statements made by defendant's co-arrestee. The nature of the surrounding circumstances suggested an admission as to the location of the proceeds from the Weems robbery. Whether or not these comments, standing alone, were a material factor in defendant's conviction, they were clearly improper.

■■ ■ Defendant's final claim is that the prosecutor's references to the uncontradicted nature of the evidence was a comment on his failure to testify and thus reversible error under *Griffin v. California* (1965), 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229. It is well established that the prosecutor may comment on the uncontradicted nature of the State's case, even when the only person who might have contradicted it was the defendant. (*People v. Mills* (1968), 40 Ill. 2d 4, 237 N.E.2d 697.) Yet the State may not comment in a manner intended or calculated to direct the jury's attention to the defendant's neglect to exercise his right to testify. (*People v. Burton* (1969), 44 Ill. 2d 53, 56, 254 N.E.2d 527; *People v. Blissitt* (1973), 12 Ill. App. 3d 551, 554-55, 299 N.E.2d 562.) The prosecutor here did not limit himself to describing the uncontradicted nature of the evidence; instead he commented:

> "Ladies and gentlemen, the testimony of the people who have testified here is uncontroverted, uncontradicted. You have heard absolutely no one tell you anything else."

The defense did present one witness, and however inefficient this attempted impeachment was, it was presented to contradict and controvert Weems' testimony concerning his description. The prohibited statement in *People v. Wollenberg* (1967), 37 Ill. 2d 480, 229 N.E.2d 490 ("No one else testified. Let's get that straight"), is so similar to that presented in the instant case as to be undistinguishable. The State argues that the surrounding circumstances of the argument distinguish the two instances. In *Wollenberg* the prosecutor listed the witnesses for the State and the two defense witnesses, then said "No one else testified." Here the

prosecutor did not list the witnesses before saying "You heard absolutely no one tell you anything else." Such brinksmanship in closing arguments, which leads to endless appeals and constant debate over the limits of prosecutorial comments, obscures the true dilemma: has the prosecutor suggested to the jury that its attention should be focused on the defendant's failure to take the stand? (See *People v. Helm* (1973), 9 Ill. App. 3d 143, 291 N.E.2d 680.) This comment may well have had such an effect. As stated in *People v. Chellew* (1968), 104 Ill. App. 2d 100, 108-09, 243 N.E.2d 49:

> "It is unfortunate that the comment was made. It may well be that it had no effect upon the outcome of the case. As we have indicated, the evidence was sufficient to support the verdict of the jury. However, there is no way we can know that the comment did not affect the result."

Each of defendant's contentions, when examined apart from the others, may not constitute reversible error, but when considered in combination, each complicates and compounds the matter. (*People v. Mwathery.*) Accordingly, when considered as a whole, we cannot say that such errors were harmless beyond a reasonable doubt or that they did not contribute to the conviction. (*Cf. People v. Weathers* (1975), 62 Ill. 2d 114, 120-21, 338 N.E.2d 880 (conviction reversed for severely prejudicial remarks despite considerable evidence against defendant).) Each of these errors goes most fundamentally to fair trial rights—admission of evidence of other crimes, comments on inadmissible evidence, and comments on defendant's invoking of his right to remain silent. Thus, defendant is entitled to a new trial.

Reversed and remanded.

DOWNING and HARTMAN, JJ., concur.