John WOODRUFF, Petitioner-Appellant,

v.

Michael LANE, Respondent-Appellee.

No. 85–2151.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 11, 1986.

Decided May 18, 1987.

Laura L. Leonard, Sidley & Austin, Chicago, Ill., for petitioner-appellant.

Nathan P. Maddox, Office of the Atty. Gen., Springfield, Ill., for respondent-appellee.

Before CUDAHY and COFFEY, Circuit Judges, and GRANT, Senior District Judge.[*]

GRANT, Senior District Judge.

The State of Illinois charged Frank and John Woodruff with two counts of murder, one count of home invasion, and one count of home burglary. After a jury trial in state court, the Woodruffs were convicted on all counts and each was sentenced to three concurrent terms of imprisonment, made consecutive to previously imposed nine-year terms of imprisonment. The Appellate Court of Illinois affirmed all the convictions. After the Supreme Court of Illinois denied permission to appeal, the Woodruffs sought habeas corpus relief in federal court, the Southern District of Illinois. Meanwhile, Frank Woodruff died and, upon notice, the district court dismissed his petition. United States Magistrate Gerald B. Cohn, acting under 28 U.S.C. § 636(c), then entered an order denying John Woodruff's petition for habeas corpus. *Woodruff v. Lane*, 84–3174 (S.D. Ill.1985). An appeal was certified, and upon considering its merits we affirm the judgment of the district court and deny the petition.

## I.

This petition for habeas corpus refers the Court back to the events of 1979 when a series of home invasions occurred in Decatur, Illinois, and back to 1980 when a jury trial resulted in convictions for the Woodruffs. From May 29 to June 12, 1979, at least four home invasions occurred in the area of Decatur. Over the course of two weeks a seemingly striking pattern developed to mark these invasions. The perpetrators entered at night to prey upon their elderly victims; they asked or looked for money; and before leaving, they tied the hands and feet of their victims with electrical cord, and sometimes gagged them with cloth. On the morning of June 13, 1979, a fifth elderly victim was found bound and gagged in a ransacked home. Elsie Cummins, however, was dead, asphyxiated by the gagging.

Meanwhile, the circumstances of the other home invasions began to fall in place. Mr. Kirkman was awakened in his home in the pre-dawn hours of May 29 by what he thought were three men asking him for money. Before leaving, the intruders tied Mr. Kirkman's hands and feet with electrical cord and laid him against the front door. Later, Mr. Kirkman identified Frank Woodruff at a lineup. Mr. and Mrs. Marvin were confronted in their home at 10:00 on the evening of June 6 by two men asking for money. They pulled the shades, searched the house, and before departing, the two men tied the Marvins with electrical cord to separate chairs. At a subsequent lineup, Mrs. Marvin identified John Woodruff and only tentatively identified Frank. At 10:00 in the evening of June 8, Mr. Walker was awakened from his sleep on the porch and ordered inside his home where two men asked for money. (Mrs. Walker, asleep upstairs, thought her clock read 1:10 A.M.) The men tied the hands and feet of Mr. and Mrs. Walker—electrical cord for him, phone cord for her—then tied them to the bed, gagged them and covered them with clothing. The intruders stole handguns with holsters, coins and other items. At 11:30 P.M. of June 12, two men entered the home of Mrs. McGlade, took money from her purse, tied her hands and feet with electrical cord, gagged her with sheet strips and covered her with a pillow

[*] The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

and clothing. Mrs. McGlade identified both John and Frank Woodruff at a lineup, despite having told police on the night of the invasion that she did not believe she would be capable of identifying anyone.

The break-in at the McGlade residence occurred on the eve of the morning police officers found Elsie Cummins dead in her home. That same night of June 12, sometime before 10:00 P.M., police officers noticed the Woodruffs' Chevrolet parked near the Cummins home. At about 10:30, the officers observed the beam of the headlights. The car moved, stopped briefly, then the two passengers of the Chevrolet drove the car past the unmarked police car. The police lost the Chevrolet in traffic.

A short while later, close to 11:45, another set of officers stationed in a car outside the Woodruffs' apartment watched as the Chevrolet approached to park. However, after the passengers of the Chevrolet appeared to notice the undercover officers, the Chevrolet bolted at high speed, prompting a mini-chase through stop signs in a residential area. Just ten minutes later the Chevrolet pulled to the curb immediately when a marked squad car appeared in pursuit. Only John Woodruff emerged from the Chevrolet.

John's wife, Debbie Woodruff, proved to be a valuable trial witness for the State. She fit pieces of the investigative puzzle together by testifying that on the night of June 12, at about 1:30 A.M., Frank had arrived at the Woodruff apartment disclosing that he jumped out of the Chevrolet and made his way back to the apartment on foot. She also related that earlier on June 12 the three of them (John, Frank and Debbie) spent the afternoon driving around Lake Decatur, scanning the neighborhood for signs of elderly residents and jotting addresses down on an envelope. The State introduced in evidence an envelope bearing many addresses, including the address of Elsie Cummins. Debbie identified the envelope as authentic. Finally, Debbie said she had seen proceeds from earlier home invasions and described the paper sack used to store the proceeds.

On this appeal, John Woodruff contends the State of Illinois denied his constitutional right to a fair trial. Not only has he argued that the evidence was insufficient to establish his guilt beyond a reasonable doubt for the crimes relating to the break-in of Elsie Cummins's home, but he also insists the admission into evidence of the details of other home invasions was erroneous and unduly prejudicial, and the prosecutor's unsubstantiated statements during opening and closing argument rendered the entire trial fundamentally unfair.

## II.

The prosecution offered evidence of four home invasions to show *modus operandi*, that the invasion of the Cummins home was according to the pattern established by the other home invasions, and ultimately, that since the Woodruffs were identified as perpetrators of the prior invasions, their "mark"—the established pattern—identified them as perpetrators of the Cummins home invasion.

■ Although evidence of other crimes and wrongs is generally not admissible to show character and conduct in conformity with it, a balancing of undue prejudice and probative value controls whether prior crimes can be used for other purposes. Fed.R.Evid. 404(b). The Illinois courts allow evidence of other crimes to show *modus operandi*, *People v. McDonald*, 62 Ill.2d 448, 343 N.E.2d 489 (1975), but because of the prejudice likely to flow from evidence of other crimes, a court must not allow this evidence unless the crimes are "so nearly identical in method as to earmark them as the handiwork of the accused." *People v. Emmett*, 34 Ill.App.3d 167, 170, 340 N.E.2d 235, 238 (1975).

Primarily, Woodruff contests the finding that the other crimes are "so nearly identical" as to establish a pattern. Woodruff argues that the fact that these home invasions occurred at night and the victims were bound is of no significance since it is a scenario common to many home invasions. Woodruff contends that these home invasions had less similarity than the events considered in *People v. Connors*, 82

Ill.App.3d 312, 37 Ill.Dec. 771, 402 N.E.2d 773 (1980), where the Appellate Court of Illinois held that identical statements made to victims did not establish a sufficient pattern, because they were "not so distinctive as to earmark each as the conduct of the same perpetrator." 82 Ill.App.3d at 318, 37 Ill.Dec. at 776, 402 N.E.2d at 778.

Woodruff also argues that the trial court ignored the differences between the Cummins home invasion and the other offenses; the absence of any distinctive factor common to all the offenses foreclosed the inference of similarity, rendering erroneous the admission of the prejudicial evidence of four unrelated crimes. Woodruff cites a handful of differences: Elsie Cummins was bound by cloth strips, the other four victims were bound by electrical or telephone cords; Elsie Cummins was found in her bedroom covered with clothing, two of the other victims were found in different rooms of their homes and were not covered with clothing; the identifications offered by the victims failed to establish the number of persons involved; and the home invaders took nothing from the Cummins home, although guns were in plain view and a large sum of money was stashed away in a drawer that appeared to be searched. (This final allegation, if true, would seem critical considering the pursuit of money was central to the *modus operandi* of the home invaders. However, this remains a hotly contested matter since the police officer on the scene testified that the envelopes of money were hidden from view.)

Woodruff was tried and convicted for murder, home invasion and burglary. The evidence concerning other crimes was admitted to show *modus operandi*, to link Woodruff to the crime for which he was being tried. As the Appellate Court of Illinois related the similarities and other significant evidence:

> The points of similarity include the following: (1) All of the victims were elderly; (2) all of the victims were bound in some manner, and in several instances, the method of binding the victims was almost identical to that of the decedent. The Walkers and Mrs. McGlade were all

told to lie on the bed, their hands were tied behind their backs, their ankles were tied, and they were tied to the bed. The Walkers and McGlade were gagged and covered with clothing and pillows while lying on the bed. This is the identical condition in which the decedent's body was discovered.

> In addition, the State sufficiently connected the defendants to these other home invasions. Mrs. McGlade identified both of the defendants as the perpetrators. Mrs. Marvin identified one of the defendants positively and tentatively identified the second. Kirkman positively identified one of the defendants. The Walkers identified the guns and blue overnight case and holster which were taken from their residence. These items were later tied to the defendants through the testimony of Debbie Woodruff who indicated that the defendants discarded the guns and holster the day after the murder.

*People v. Woodruff,* Nos. 16372–16373, at 3 (4th Dist.1981) [94 Ill.App.3d 1207, 53 Ill. Dec. 815, 424 N.E.2d 450 (table)].

In *People v. Connors,* 82 Ill.App.3d at 312, 37 Ill.Dec. at 771, 402 N.E.2d at 773, the principal case relied upon by Woodruff, the court held that a car theft occurring four hours before and six blocks from the charged robbery was not similar enough under the *modus operandi* rationale:

> The similarities that both happened at night, with a gun, near the victim's car are insufficient to show modus operandi. Similarly, the statements made to each of the victims—"Don't make me shoot you" and "if you move I'll shoot"—are common to crimes in general, and not so distinctive as to earmark each as the conduct of the same perpetrator.

*Id.* 37 Ill.Dec. at 776, 402 N.E.2d at 778.

The *Connors* holding is along the same lines of *United States v. Pisari,* 636 F.2d 855 (1st Cir.1981), which found that evidence of a prior crime with a knife is not "sufficient signature or trademark upon which to posit an inference of identity." *Id.* at 859. Our case, however, is perhaps

more analogous to the factual situation in *United States v. Myers,* 550 F.2d 1036 (5th Cir.1977) which instructed:

> An early afternoon robbery of an outlying bank situated on a highway, by revolver-armed robbers wearing gloves and stocking masks, and carrying a bag for the loot, is not such an unusual crime that it tends to prove that one of the two individuals involved must have been the single bandit in a similar prior robbery.

*Id.* at 1046.

Nonetheless, these closer evidentiary questions are primarily the domain of the trial judge and are reviewed for an abuse of discretion by the state appellate court. "Within the perimeters of the Due Process Clause the states are free to establish their own rules of evidence and are exempt from federal oversight except in those instances where errors of a constitutional magnitude have been made." *United States ex rel. Bleimehl v. Cannon,* 525 F.2d 414, 420 (7th Cir.1975). The Appellate Court of Illinois held that the trial court properly applied the law in exercising its discretion to admit the evidence for *modus operandi;* at this stage this Court is concerned only with errors which deny fundamental fairness to the trial proceedings. *United States ex rel. Harris v. State of Illinois,* 457 F.2d 191, 198 (7th Cir.), *cert. denied,* 409 U.S. 860, 93 S.Ct. 147, 34 L.Ed.2d 106 (1972). Although, here, evidence of prior home invasions is probative and critical to the proof required for a guilty verdict (criminals tend easily to fall into recognizable patterns), the Constitution requires us to give further consideration to the prejudicial effect of admitting the evidence.

As the district court properly framed the inquiry: "Only when the probative value of evidence of prior criminal acts, though relevant, is *greatly* outweighed by the prejudice to the accused from its admission, does the use of such evidence by the State in a criminal trial rise to the level of a denial of fundamental fairness." *Woodruff v. Lane,* at 3 (citing *United States ex rel. Durso v. Pate,* 426 F.2d 1083, 1086 (7th Cir.1970), *cert. denied,* 400 U.S. 995, 91 S.Ct. 469, 27 L.Ed.2d 445 (1971); *United States ex rel.*

*Bleimehl v. Cannon,* 525 F.2d 414, 420 (7th Cir.1975)). The district court found no denial of fundamental fairness:

> The similarities between the occurrances (sic) are such that the evidence of the other home invasions is highly relevant to show a common scheme or method of operation, and thus to prove that Woodruff perpetrated the crimes for which he was tried and convicted. Any prejudice to the petitioner does not greatly outweigh the high probative value of the evidence.

*Woodruff v. Lane,* at 3.

■ We agree with the district court that the probative value of the evidence is not greatly outweighed by the prejudice flowing from its admission. As this case is postured, granting a petition for habeas corpus requires more than a mere finding of prejudice. *United States ex rel. Bleimehl,* 525 F.2d at 421. We must look to the facts of the case in their totality, *Id.,* and we cannot say the prejudice was so unfair as to deny due process. The probative value of the other crimes evidence was great; it linked the Woodruffs to the Cummins crime because the similarities of the home invasions were distinctive enough to identify the perpetrator. The other crimes evidence did not appeal to the jury's sympathies, arouse its sense of horror or provoke its instinct to punish; it did not cause the jury to render a decision based on improper considerations. The evidence of other crimes was offered in the context of a trial where other damaging evidence was admitted adversely to the Woodruffs. The evidence of other crimes permitted the jury to grasp the relevant events of June 1979 by piecing together the evidence collected from other sources: the observations of law enforcement officers, the identifications from victims and the testimony from Debbie Woodruff.

■ The law of this Circuit does not allow the government to introduce evidence of other acts by a defendant in order to prove propensity to commit the crime charged. *United States v. Shackleford,* 738 F.2d 776, 779 (7th Cir.1984). But such evidence may be offered to show *modus*

*operandi* if the evidence bears a singular strong resemblance to the pattern of the offense charged. *United States v. Chaimson,* 760 F.2d 798, 808 (7th Cir.1985); *Shackleford,* 738 F.2d at 783. Typically, the Court relies on a four-pronged test: (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the prior acts are similar enough and recent enough to be relevant to the charged offense; (3) the evidence is clear and convincing; and (4) the probative value of the evidence outweighs the possibility of undue prejudice. *United States v. Tomasian,* 784 F.2d 782, 784 (7th Cir.1986); *United States v. Liefer,* 778 F.2d 1236, 1242 (7th Cir.1985). We believe admission of this other crimes evidence would satisfy the four-pronged analysis, although our consideration of the constitutional issue raised by Woodruff does not necessarily require application of the test. We take the opportunity to note that on the "clear and convincing" element, John Woodruff was already convicted of the Walker home invasion prior to the trial for the Cummins crime. In conclusion, we find no constitutional error in admitting the evidence of other crimes to establish *modus operandi.*

■ Woodruff has also argued that habeas corpus is proper because police officers were permitted to testify that in their investigation of the home invasion crimes they had "been looking for" a car with a description matching the Woodruffs' blue and white Chevrolet. The police also testified that the Woodruff apartment was under surveillance. Woodruff contends the testimony implied a long history of continuing criminal activity and, therefore, admission of the testimony precluded a fair trial. We must decline to reach the merits of the argument. Although it is unclear whether the argument was made in the district court, the state appellate court not only found no error in allowing the testimony but considered the argument waived because of a failure to object to any of the testimony at trial. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), bars consideration of Woodruff's argument unless he can show cause for the

default and actual prejudice from the alleged error. Woodruff has offered no explanation for the failure to object, the argument is therefore barred.

### III.

Woodruff next contests the sufficiency of the evidence produced by the prosecution; he argues the evidence was insufficient to justify a rational trier of fact to find guilt beyond a reasonable doubt. Woodruff claims the State's case was deficient in that it offered no direct evidence of his guilt. The State never produced the proceeds of the alleged criminal activity, and it did an inadequate job of linking the Woodruffs to the events occurring at the Cummins residence. Nobody saw the Woodruffs at the Cummins residence, and no evidence established the time of death as being near the time when Officer Pettinger observed the blue Chevrolet in the area of the Cummins residence. Therefore the government had to rely, unfairly, on admitting evidence of other crimes in the area. Moreover, Woodruff contends the impeachment testimony offered at trial proved Debbie Woodruff to be an incredible witness.

■ We note from the outset that our standard of inquiry is whether, in the light most favorable to the State, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Moya,* 721 F.2d 606, 610 (7th Cir.1983), *cert. denied,* 465 U.S. 1037, 104 S.Ct. 1312, 79 L.Ed.2d 709 (1984). Furthermore, it is clear that circumstantial evidence is as pertinent as direct evidence to the issue of guilt or innocence. *United States v. Bradshaw,* 719 F.2d 907, 921 (7th Cir.1983). *See People v. Stone,* 46 Ill.App.3d 729, 5 Ill.Dec. 191, 361 N.E.2d 330 (1977).

■ Not only does Woodruff contend it was error to admit evidence of other crimes, but he argues the testimony of Debbie Woodruff was incredible. According to John Woodruff, Debbie was on pro-

bation and in fear of being charged with other crimes because it might mean she must relinquish the custody of her child. She had been estranged from her husband because of an affair with Kevin, John Woodruff's minor brother. Essentially, John argues that his wife had a motive to lie. We are not in the business of ascertaining the credibility of trial witnesses, but will consider the issue inasmuch as it affects our role of determining whether a rational jury could find the essential elements of the crime beyond a reasonable doubt. The Appellate Court of Illinois summarized the evidence as follows:

In this case, the decedent was last known to be alive at approximately 10 p.m., on June 12. From 9:30 to 10:30 p.m., the defendants' car was parked one block from the Cummins residence. At 10:30 p.m., an unidentified white male entered the car, drove a short distance, stopped, and a second white male entered the car. The car was positively identified as John Woodruff's car. The police followed the car but lost it in traffic. At 11 p.m., a neighbor of the decedent noticed that all of the lights in the decedent's house were lit and the shades were drawn. Both of these circumstances were uncharacteristic of the victim's habits.

At 11:30 p.m., the McGlade residence was invaded and the intruders stayed approximately 20 minutes. The McGlade residence is five blocks from defendant John Woodruff's apartment. At 11:50 p.m., another set of police officers saw the Woodruff vehicle arrive at the Woodruff apartment. As the car began to park, the driver looked back in the direction of the police officers and the car sped off. The officers gave chase but were no closer than one block from the vehicle. The car ran three stop signs and a marked squad car eventually stopped it. Two people were in the car when it sped from the Woodruff residence but only John Woodruff was apprehended when the car was stopped. Frank Woodruff later arrived at the Woodruff apartment and told John Woodruff's wife that he had jumped out of the moving car and made his way to the apartment on foot.

Upon learning that arrest warrants were out for the defendants the next day, Frank Woodruff disposed of guns, holsters, and the envelope on which the addresses, including the decedent's, were written. This circumstantial evidence, coupled with the similarity of the other home invasions, was sufficient, if believed by the jury, to constitute proof beyond a reasonable doubt.

*People v. Woodruff,* at 7–8.

We agree that sufficient evidence was produced at trial to justify a finding of guilt beyond a reasonable doubt.

### IV.

Woodruff also claims that the misconduct of the prosecutor denied him the right to a fair trial. During opening arguments, the prosecutor said a witness would testify that John Woodruff had confessed to participating in the home invasions. The trial court, however, sustained defense counsel's objections to introduction of such evidence. Yet, Woodruff contends it is reversible error for the prosecutor to comment on testimony which cannot be produced as evidence, since the jury could infer that Woodruff did confess and that only a legal technicality precluded the jury from hearing the circumstances surrounding the confession. Woodruff insists the statement was not made in "good faith" but, in fact, showed the prosecutor ignored the principle that an opening statement "should be brief and general rather than detailed and should be free from material that may tend to improperly prejudice the accused in the eyes of the jury." *People v. Weller,* 123 Ill.App.2d 421, 427, 258 N.E.2d 806, 809 (1970).

Woodruff finds further grounds for error in the prosecutor's closing argument. The prosecutor introduced evidence of flight—the blue Chevrolet speeding away from its pursuers—and over defense objection, the court allowed it for the limited purposes of showing that the Woodruffs were together on the night of June 12 and

of demonstrating how the police apprehended John Woodruff. Woodruff argues that the prosecutor referred to this evidence in closing to imply Woodruff's guilt, in direct contravention of the court's limitation on use of the evidence. Woodruff argues that under Illinois law (citing *People v. Harris,* 23 Ill.2d 270, 178 N.E.2d 291, 293 (1961)), the prosecution must establish a proper foundation before the inference of guilt can be drawn from flight. He contends the failure to stop for an unmarked personal vehicle is not evidence that a crime has been committed or that one is suspected of committing that crime.

Woodruff also argues that in closing the prosecutor made misleading characterizations of the evidence by suggesting the conclusion to draw from the evidence rather than allowing the jury to decide for itself. For example, the prosecutor commented that Debbie Woodruff testified that Frank bailed out of the car as the police were in pursuit, when in fact Debbie only testified that Frank said he jumped out of John Woodruff's car and then returned to the apartment. Such misleading statements, Woodruff contends, denied him a fair trial.

Finally, Woodruff contends the prosecutor improperly appealed to the sympathy and fears of the jury by detailing the undisputed nature of Elsie Cummins's injuries and by suggesting the Woodruffs would have committed other home invasions had they not been arrested.

Our concern at this stage is with "inflammatory" conduct which prejudiced the defendant, *United States v. Zylstra,* 713 F.2d 1332, 1339 (7th Cir.), *cert. denied,* 464 U.S. 965, 104 S.Ct. 403, 78 L.Ed.2d 344 (1983); *United States ex rel. Clark v. Fike,* 538 F.2d 750, 760 (7th Cir.1976), *cert. denied,* 429 U.S. 1064, 97 S.Ct. 791, 50 L.Ed.2d 781 (1977), or which "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974). A criminal conviction is not to be "lightly overturned on the basis of a prosecutor's comments standing alone," *United States v.*

*Young,* 470 U.S. 1, 11, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985); we must consider the context of the trial as a whole, *Zylstra,* 713 F.2d at 1340, and whether the statements would affect the jury's ability to judge the evidence fairly. *Young,* 470 U.S. at 12, 105 S.Ct. at 1045. We know that if a case is "close" egregious prosecutorial misconduct might require reversal of the trial judge's finding that it had not prejudiced the jury's consideration of the case, *United States v. Mazzone,* 782 F.2d 757, 764 (7th Cir.), *cert. denied,* ── U.S. ──, 107 S.Ct. 141, 93 L.Ed.2d 84 (1986), but the focus of the due process analysis must be the fairness of the trial, not the culpability of the prosecutor. *United States ex rel. Bonner v. DeRobertis,* 798 F.2d 1062, 1069 (7th Cir.1986) (citing *Smith v. Phillips,* 455 U.S. 209, 219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78 (1982)).

■ "Although inflammatory argument may be grounds for reversal, the government should not be restricted to a sterile recitation of uncontroverted facts." *United States v. Chu,* 779 F.2d 356, 370 (7th Cir.1985) (quoting *United States v. Scott,* 660 F.2d 1145, 1177 (7th Cir.1981)). Under Illinois law, a prosecutor may comment on the evidence and the reasonable inferences to be drawn from that evidence. *People v. Weatherspoon,* 63 Ill.App.3d 315, 20 Ill. Dec. 14, 379 N.E.2d 847 (1978). The law of this Circuit is no different. *United States v. Buchbinder,* 796 F.2d 910, 919 (7th Cir. 1986). "Inferences, however, must be fair comment on the evidence, and not akin to the presentation of wholly new evidence." *United States v. Radtke,* 799 F.2d 298, 310 (7th Cir.1986); *United States v. Doyle,* 771 F.2d 250, 258 (7th Cir.1985).

■ The state appellate court and federal district court concluded that the prosecutor's opening argument references to a purported confession were made in good faith. Prior to trial, the court had stated it was possible that testimony from the witness might be allowed, but it would reserve ruling on the question until the evidence developed. The court recessed to review the legal authorities on the question of a declaration against penal interest as an exception to the rule forbidding hearsay evi-

dence. An arguable legal issue existed, but the State ultimately lost on the evidentiary ruling. We need not decide whether we fully agree that the opening remarks were made in good faith, however, we do find that the court's instruction not to consider any statement not based on the evidence blunted whatever prejudice resulted from the reference to a confession. *See United States v. Reynolds*, 801 F.2d 952, 957 (7th Cir.1986).

 Counsel for Woodruff did not object to the suggestion in the prosecutor's closing argument that evidence of the car chase could be considered evidence of flight which the jury could use to infer guilt. The state appellate court found that Woodruff had waived the right to dispute the State's improper extension of the purpose for which the evidence was admitted. Woodruff's argument on the issue of flight is barred by *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), since defense counsel's judgment that an objection was inadvisable is not sufficient "cause" to present a waived issue in the federal courts. *See United States ex rel. Crist v. Lane*, 745 F.2d 476, 482-3 (7th Cir.1984).

Woodruff's remaining arguments lack merit. The alleged misstatements of facts and evidence, we believe, were harmless and in no way prejudiced the jury's consideration of the case. Woodruff could not show that, but for these minor misstatements, the jury would have returned a not guilty verdict. *See United States v. Wheeler*, 800 F.2d 100, 107 (7th Cir.1986). Moreover, we find no constitutional error in the prosecution's detailed description of the circumstances surrounding the death of Elsie Cummins. This line of attack was necessary to link the Cummins crime to the other home invasions. The State's approach did not unnecessarily appeal to the sympathy or fears of jurors, and we do not consider the prosecutor's statements to be inflammatory argument.

Upon considering the "totality of the effect of the alleged errors," *United States ex rel. Crist*, 745 F.2d at 482, we cannot say the trial was fundamentally unfair.

For the reasons set forth above, the district court's denial of the petition for habeas corpus is affirmed.

Affirmed.